RANDOLPH, Justice,
for the Court.
¶ 1. Following a jury trial in the Circuit Court of Tippah County, Mississippi, fifty-four-year-old Roger Green was convicted of two counts of sexual battery and two counts of touching a child for lustful purposes involving D.W., Green’s ten-year-old stepdaughter. Following denial of Green’s “Motion for Judgment Notwithstanding the Verdict or in the Alternative For a New Trial,” Green filed this appeal. We affirm Green’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶2. On April 23, 2008, D.W. informed her special education teacher,[1] her regular education teacher, the school counselor, and the school nurse that Green was sexually molesting her by “sticking] his fingers in me every morning when he gets up[,] *546 ... in my private parts.”[2] D.W. repeated these charges to a social worker with the Mississippi Department of Human Services (“DHS”). In a subsequent interview with forensic interviewer Angie Floyd of the Family Resource Center in Tupelo, Mississippi, D.W. stated that Green regularly put his finger inside her vagina “in her bedroom when she would wake up in the morning,” on other occasions “in the living room at her house,”[3] and that he had also driven her to a “blue trailer” and touched her breasts with his mouth and made her touch his penis. All incidents occurred in Ripley, Mississippi, where her family had lived since December 2007.
Trial — State’s case
¶ 3. At trial, Floyd testified regarding her forensic interview with D.W., and the audio-visual recording of that interview was played before the jury. D.W., then-eleven years old, testified that she understood the difference between telling the truth and lying, and that her statements to Floyd were true; and then she made an in-court identification of Green as the perpetrator. D.W. added that Green had threatened to “slap” her if she told anyone about the incidents, which had scared her.
¶ 4. The State also offered the testimony of four witnesses of the same sex (female) who alleged that Green had sexually abused them in a similar manner (the same or similar acts, in their homes), in an intrafamilial context (the same or similar relationships to Green), when they were near the age of puberty (the same or similar ages).[4] Green objected to the introduction of such testimony. As shown infra, the circuit court followed the directives of Derouen v. State, 994 So.2d 748, 756 (Miss.2008), for the admission of “evidence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense[,]” and admitted the testimony of all four witnesses. See paragraphs 5-11 infra.
¶ 5. In the Rule 404(b) hearing and at trial, M.S.,[5] the twenty-five-year-old ex-stepdaughter of Green, testified that when she was thirteen years old, Green would come into her bedroom “when everybody was asleep[,]” nearly “every other nightf,]” and would “play with my breasts and stick his finger in my vagina.” Additionally, days before M.S.’s fourteenth birthday, Green informed her that he wanted to take her to the store to buy her something, but then “parked like in a gravel road, like a dead end street, and he was taking off my clothes and ... trying to put his penis in my vagina.” According to M.S., Green only stopped the attempted rape when her mother fortuitously called his cell phone and “he told her we was coming home.” When M.S. told her mother about the sexual abuse, “she wouldn’t listen, so I ended up telling the people in school.”[6]
*547 ¶ 6. In the Rule 404(b) hearing and at trial, seventeen-year-old K.M.H., another former stepdaughter of Green, testified that when she was between the ages of ten and twelve years old, Green “would come in my room at night and mess with me. He would put his finger in my vagina at night when everybody was asleep.” Moreover, on one occasion when K.M.H. was twelve years old, she went shopping with Green, following which he drove them “behind a church and he got out of the truck and pulled his pants and all down and then pulled mine down and he stuck his penis in my vagina.” After that incident, K.M.H. testified that Green had threatened her, stating that “if I would tell anybody that he would kill my mom and my sister.” While K.M.H. informed her mother about the sexual abuse, she initially recanted her account of the incident, because she was afraid of Green.[7]
¶ 7. In the Rule 404(b) hearing and at trial, A.R., Green’s thirty-five-year-old niece testified that when she was seven or eight years old, Green and his wife had “stayed the night” at her parents’ home. Green and his wife slept on a mattress on the floor, while A.R. slept on the couch. According to A.R., she “woke up to [Green] touching me in my private parts.” While this was a one-time occurrence, A.R. subsequently avoided being alone with Green. She did not report the incident to anyone when she was younger because “I just didn’t think they would believe me.”
¶ 8. In a Rule 404(b) proffer[8] and at trial,[9] P.B., Green’s forty-nine-year-old half-sister testified that, when she was eight or nine years old, she began living in the same home as Green (then-fourteen or fifteen years old). According to P.B., between the ages of nine and thirteen, Green would touch her “private areas” with “[h]is hand and penis,” and would have sexual intercourse with her. When P.B. informed her mother about the sexual abuse, her story was dismissed, with her mother stating that she “was taking things the wrong way.”[10] P.B. testified that the sexual abuse ceased only after Green left home when she was thirteen years old. When P.B. was fifteen years old, Green and his then-wife moved back in, at which point P.B. got married allegedly to get away from Green.
¶ 9. Following the Rule 404(b) hearing testimony of M.S., K.M.H., and A.R., the circuit judge concluded that “this is a concrete example of where kQk(b) applies. ... I’m satisfied that there are overwhelming similarities to prove motive, opportunity, intent and the other factors under Rule 404(b) ... and this is a textbook copy of ... the exception created in [Der- *548 ouen ].” (Emphasis added.) As to P.B.’s subsequently proffered testimony, the circuit judge found it “a little bit different, but I still believe that it’s under the purview of the kOU(b) proof that the [ejourt has deemed appropriate under the very specific facts of this case .... ” (Emphasis added.)
¶ 10. Regarding Mississippi Rule of Evidence 403, the circuit judge acknowledged that “the more people you have, the more prejudicial it is, but the more people you have, ... the more likely it is that it is a reliable indicator of a pattern or plan.” (Emphasis added.) As to M.S., K.M.H., and A.R., the circuit judge concluded that under Rule 403, “this testimony ... is more probative than prejudicial, and therefore, the [ejourt is going to allow it.” Regarding P.B.’s proffered testimony, the circuit judge deemed it more probative than prejudicial, “based upon the totality of the circumstances and based also upon the specific nature of the offenses in this case.”
¶ 11. Finally, the circuit court provided the following cautionary instruction after the testimony of each of the other victims:
[tjhe testimony of the State’s witness ... is to be used for the purpose of establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident on the part of the defendant, ... and should not be considered as substantive evidence in this case. Remember that the defendant is on trial here only for the crimes alleged in the indictment ... and not for any other acts. You may not return a guilty verdict unless the State proves the crime or crimes charged in the indictment beyond a reasonable doubt.[11]
Trial — Green’s case
¶ 12. Green’s defense at trial was that he had been wrongly accused. The sole witness for the defense was Green’s ten-year-old son, Dakota Green, who had resided in the home with Green, D.W., and D.W.’s mother. Dakota testified that he had never observed any inappropriate contact between Green and D.W. He added that D.W. had disclosed to him that she previously had been molested by her biological father and uncle.

Jury verdict and sentencing

¶ 13. The jury convicted Green on all counts. The circuit court sentenced Green to two terms of life imprisonment for the sexual-battery counts and to two fifteen-year terms of imprisonment for the counts of touching a child for lustful purposes, with all sentences to run consecutively. Following the circuit court’s denial of Green’s “Motion for Judgment Notwithstanding the Verdict or in the Alternative For a New Trial,” Green filed this appeal.
ISSUES
¶ 14. This Court will consider:
(1) Whether the circuit court abused its discretion in admitting evidence of other sexual offenses via the testimony of M.S., K.M.H., A.R., and P.B.
*549 (2) Whether the “tender years” exception of Mississippi Rule of Evidence 803(25) was properly applied by the circuit court.
(3) Whether the circuit court wrongfully excluded defense evidence.
(4) Whether the jury verdict was contrary to the overwhelming weight of the evidence.
ANALYSIS
I. Whether the circuit court abused its discretion in admitting evidence of other sexual offenses via the testimony of M.S., K.M.H., A.R., and P.B.
¶ 15. “A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the Court will not reverse this ruling.” Gore v. State, 37 So.3d 1178, 1183 (Miss.2010) (quoting Price v. State, 898 So.2d 641, 653 (Miss.2005); Walker v. State, 878 So.2d 913, 915 (Miss.2004)) (emphasis added). “[E]vi-dence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial[,]” may be considered by the jury “if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction. ...” Derouen, 994 So.2d at 756.

(a) Rule k0k(b)

¶ 16. Rule 404(b) provides that:
[ejvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Miss. R. Evid. 404(b). The other purposes listed in Subsection (b) are not exclusive.[12] See Miss. R. Evid. 404 cmt.
¶ 17. The testimony of M.S., K.M.H., A.R., and P.B. was offered to show that, over the course of five decades, Green engaged in the sexual abuse of female family members[13] in a similar manner (the same or similar acts, in the same or similar locations), when they were near the age of puberty, i.e., vulnerable, “young and developing ... juveniles” (the same or similar ages). Gore, 37 So.3d at 1187 (quoting State v. Driggers, 554 So.2d 720, 726 (La.Ct.App.1989)). At the time of the sexually abusive offenses, D.W. was ten years old, M.S. was thirteen, K.M.H. was between the ages of ten and twelve, A.R. was seven or eight years old, and P.B. was *550 between the ages of nine and thirteen.[14] At the time of the sexually abusive offenses, D.W., M.S., and K.M.H. all were Green’s stepdaughters; A.R. his niece; and P.B. his half-sister. D.W. regularly was digitally penetrated by Green in her bedroom and the living room; M.S. and K.M.H. regularly were digitally penetrated by Green in their bedrooms, A.R. was digitally penetrated by Green in her living room, and Green’s regular illicit conduct with P.B. included digital penetration in their home.[15] On one occasion, Green drove D.W. to a remote location, then proceeded to touch her breasts and make her touch his penis; similarly, Green drove M.S. and K.M.H. to remote locations where he either attempted or consummated raping the young girls.[16] Finally, D.W. was threatened by Green not to report the sexual abuse; similarly, Green threatened to kill K.M.H.’s mother and sister if K.M.H. reported the sexual abuse.[17] Under the facts presented, the “overwhelming similarities”[18] between these other sexual offenses and threats and the incidents at issue undeniably bring the testimony of these other victims within the purview of admissibility under Rule 404(b).[19] While the dissent maintains that *551 “it is necessary that a trial judge, in applying Rule 404(b), make on-the-record findings of the several exceptions he or she deems applicable[,]” our caselaw reflects that the trial court’s failure to identify the specific applicable exception(s) under Rule 404(b) does not require reversal. (Kitchens Op. at ¶ 49). See Gore, 37 So.3d at 1186 (“[u]nder one or more of the exceptions listed in Rule 404(b), the circuit court did not abuse its discretion in admitting evidence of Gore’s prior sexual abuse of his daughter_”). Accordingly, the circuit court did not abuse its discretion in admitting the subject testimony under Rule 404(b).
¶ 18. While not addressed by the circuit court or briefed by the parties, Presiding Justice Dickinson opines that the “doctrine of chances” would have provided another basis for admissibility. (Dickinson Op. at ¶ 38). However, we part with our learned colleague in his assertion that the “doctrine of chances” does not implicate Rule 404(b). (Dickinson Op. at ¶ 42). In People v. Mardlin, 487 Mich. 609, 790 N.W.2d 607 (2010), the Michigan Supreme Court stated that:
[ejvidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant’s character. Evidence is inadmissible under this rale only if it is relevant solely to the defendant’s character or criminal propensity. Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a non-exhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant’s character. Any undue prejudice that arises because the evidence also unavoidably reflects the defendant’s character is then considered under the MRE 403 balancing test....
Id. at 612 (emphasis in original). As stated in footnote 19 supra, the testimony of the other victims was offered and admitted for noncharacter purposes, and certainly satisfies Mississippi Rules of Evidence 401 and 402.[20] The fact that such evidence “unavoidably reflects the defendant’s character” is for the trial judge to consider, within his or her discretion, under Rule 403. Id. But the mere fact that evidence offered for noncharacter purpose(s) bears some reflection on the defendant’s character does not bar its admissibility under Rule 404(b). Moreover, the absence of a “single continuing conception or plot” between the prior acts and the charged offense does not nullify the applicability of the other purposes listed in Rule 404(b). Sabin, 614 N.W.2d at 899-900. See also Fisher, 532 So.2d at 994, 999-1000.

*552
(b) Rule kOS

¶ 19. Rule 403 states, in pertinent part, that “[although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice....” Miss. R. Evid. 403 (emphasis added).
¶ 20. As paragraph 17 supra clearly reflects, the circuit court was presented with the same genre of conduct visited upon the same class of persons (i.e., “pedo-philic sexual activities with young and developing [intrafamilial] female juveniles”), with Green’s “means of accomplishing those activities on past occasions bearing] substantial resemblance to each other and with the present offens[e].” Gore, 37 So.3d at 1187 (quoting Driggers, 554 So.2d at 726). Indeed, there is an eerily “striking similarity between the prior bad acts and the acts for which the defendant is charged.”[21] Gore, 37 So.3d at 1192 (Kitchens, J., dissenting) (emphasis added). In today’s case, the circuit court was presented with compelling evidence of a sordid history of similar sexual predatory conduct through the sexual abuse of female family members (the same or similar relationships to Green), in a similar manner (the same or similar acts, in the same or similar locations), when they were near the age of puberty, i.e., vulnerable, “young and developing ... juveniles” (the same or similar ages). Gore, 37 So.3d at 1187 (quoting Driggers, 554 So.2d at 726). Under such circumstances, the circuit court did not abuse its discretion in finding that the probative value of the subject testimony was not “substantially outweighed” by its prejudicial effect. Miss. R. Evid. 403.

(e) Limiting or cautionary instructioii

¶ 21. The cautionary instructions following the testimony of each of the other victims, as well as Jury Instruction C-5, are nearly identical to the limiting instruction provided to the jury in Gore and satisfy the requirement of “an appropriately-drafted limiting or cautionary instruction. ...” Gore, 37 So.3d at 1187. See also Derouen, 994 So.2d at 756.

Conclusion

¶ 22. The circuit court carefully and meticulously considered, then admitted, the testimony of M.S., K.M.H., A.R., and P.B. under Rule 404(b); filtered it through Rule 403; and then provided appropriate cautionary instructions to the jury following the testimony of each witness, as well as a final limiting instruction, as mandated by recent decisions of this Court. See Gore, 37 So.3d at 1187; Derouen, 994 So.2d at 756. Accordingly, the admission of these similar, other sexual offenses was not an abuse of discretion.
II. Whether the “tender years” exception of Mississippi Rule of Evidence 803(25) was properly applied by the circuit court.
¶ 23. Green now contends that the circuit court abused its discretion in not con *553 ducting a Rule 803(25)[22] hearing to determine the reliability of D.W.’s statements to the school nurse, Reed, and the forensic interviewer, Floyd. Green further maintains that the circuit court erred in admitting testimony of KM.H.’s mother regarding the accusations made against Green by K.M.H., because her testimony was inadmissible hearsay, violative of Rule 404(b), and was not accompanied by a limiting instruction. Finally, Green argues that the circuit court erred in allegedly allowing hearsay testimony by Investigator Scott Watson of the Ripley Police Department. Specifically, Watson testified regarding the course of the investigation and stated very generally that allegations of sexual misconduct were made by D.W. against Green during Floyd’s forensic interview of D.W.
¶ 24. Regarding the subject testimony of Reed, Floyd, and KM.H.’s mother, Green acknowledges that he failed to object to their admission. Furthermore, Green declined a limiting instruction following the testimony of K.M.H.’s mother. “This Court has consistently held that the failure to make a contemporaneous objection constitutes waiver of an issue on appeal.” Derouen, 994 So.2d at 751 (citing Walker v. State, 671 So.2d 581, 587 (Miss.1995)). Accordingly, Green is proeedurally barred from arguing that such testimony was erroneously admitted.
¶ 25. As to Investigator Watson’s testimony, Green’s objections at trial were not that Rule 803(25) was misapplied by the circuit court. At trial, Green, only objected that Watson’s testimony was based on knowledge he had gleaned from the videotaped interview. Specifically, “Mbjection. It’s asking him to testify to something that he heard from a video. It’s certainly not best evidence of anything. It’s hearsay.” When asked D.W.’s age at the time of the alleged incidents, Watson responded that she was ten years old. Again, Green objected on the basis that this information was gleaned from Watson’s having watched the recording of the forensic interview, not that Rule 803(25) had been misapplied in allowing Watson’s testimony. Accordingly, Green has failed to preserve this assignment of error for appeal, as there was no specific objection at trial to Watson’s testimony on the basis that a Rule 803(25) hearing had not been held to determine the reliability of .the testimony. See Scott v. State, 796 So.2d 959, 964 (Miss.2001) (citing Oates v. State, 421 So.2d 1025, 1030 (Miss.1982); Heard v. State, 59 Miss. 545 (1882)) (“It is well established that objections must be made with specificity to preserve for appeal.”); Brown v. State, 682 So.2d 340, 350 (Miss.1996) (“[A]n objection on one or more specific grounds constitutes a waiver of all other grounds.”).
¶ 26. Alternatively, Green argues that his trial counsel was ineffective for failure to properly object to the aforementioned testimony. “In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney’s performance was deficient, and that *554 the deficiency was so substantial as to deprive the defendant of a fair trial.” Holly v. State, 716 So.2d 979, 989 (Miss.1998) (citing Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Even assuming arguendo that trial counsel’s performance was deficient, we cannot conclude that Green was deprived of a “fair trial.” Id. As discussed in Issue IV infra, the jury was presented with such overwhelming evidence of Green’s guilt that he cannot satisfy the prejudice prong.
III. Whether the circuit court wrongfully excluded defense evidence.
¶ 27. Green argues that the circuit judge erred when he sustained the State’s objection to some of the testimony of Dakota, the defendant’s son. Green argues that Dakota would have testified that D.W. fabricated the allegations because a friend told her that making such a false allegation would result in D.W. being removed from Green’s home.
¶ 28. “When testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal.” Metcalf v. State, 629 So.2d 558, 567 (Miss.1993) (citations omitted). See also Miss. R. Evid. 103(a)(2). Since the record does not include a proffer of the basis of Dakota’s alleged knowledge on this subject, this issue has not been properly preserved for appeal. Accordingly, this issue is procedurally barred.
IV. Whether the jury verdict was contrary to the overwhelming weight of the evidence.
¶ 29. “This Court reviews a trial court’s denial of a motion for a new trial under an abuse-of-discretion standard.” King v. State, 83 So.3d 376, 379 (Miss.2012) (citing Massey v. State, 992 So.2d 1161, 1164 (Miss.2008)). “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (Miss.2005). “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id.
¶ 30. Through the trial testimony of D.W.; her in-court identification of Green as the perpetrator; the audio-visual recording of the forensic interview with D.W.; the testimony of Floyd, the forensic interviewer; and the Rule 404(b) testimony of M.S., K.M.H., A.R., and P.B., the jury was presented with overwhelming evidence of Green’s guilt. As the learned circuit judge observed at sentencing, “this is a very sound verdict, very well supported by the evidence in this case, ... and there is no realistic question about [Green’s] guilt in this case.” (Emphasis added.) Because the jury verdict was not against the overwhelming weight of the evidence, the circuit court did not abuse its discretion in denying Green’s motion for a new trial. Accordingly, this issue is without merit.
CONCLUSION
¶ 31. The circuit court precisely applied the directives of Derouen and did not abuse its discretion in admitting the evidence of other similar sexual offenses. The issue of whether Rule 803(25) was improperly applied is procedurally barred. Likewise, Green’s complaint that Dakota’s testimony was improperly excluded is procedurally barred, due to a failure to sufficiently proffer the testimony and preserve it in the appellate record. Finally, the jury verdict was not against the over *555 whelming weight of the evidence, such that the circuit court did not abuse its discretion in denying Green’s motion for a new trial. Thus, we affirm Green’s convictions and sentences.
¶ 32. COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY TO EACH OTHER.
WALLER, C.J., CARLSON, P.J., LAMAR AND PIERCE, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.

. Rosemary Reed, the school nurse, testified that D.W. is "a special child. She has a genetic eye disorder. She’s in Special Ed. She has learning disabilities. She has a ruling of other health issues.... [SJhe’s blind in one eye; looked very malnourished; wasn’t the cleanest child at school.”

. According to D.W., she initially reported the sexual abuse to her mother, who accused D.W. of lying. D.W. testified that she then told school officials about Green’s conduct "[b]ecause I thought somebody should know to get me out of that place.”

. While a subsequent medical examination of D.W. was inconclusive, there was testimony that such a result is common "when there’s just digits or fingers ... inserted.”

. The State contended during the Mississippi Rule of Evidence 404(b) hearing, "for 30 years [Green] has molested young girls-go to her bed, put his fingers in her, go to another young girl’s bed and puts his fingers in her. Ten years later, he’s still doing it. At the present time, he’s still doing it.”

. This Court abbreviates each victim’s name in order to preserve her anonymity.

. Following a DHS investigation, Green was not criminally charged. According to M.S., the social worker incorrectly reported that she stated Green had "full intercourse” with her (which was not true), and that, at the *547 time, she stated she did not know if she could go through a trial. M.S. also testified that she never recanted her allegation that Green had sexually molested her, even after Green offered her $500. According to M.S., she refused this bribe.

. P.W., K.M.H.'s mother, testified that her other daughter also had alleged that Green "messed with her....” But after Green sent P.W. several letters about DHS taking the children away from her, the other daughter recanted.

. At the time of trial, P.B. was imprisoned at the Mississippi State Penitentiary for ”[p]os-session of precursors.” She arrived in court after the Rule 404(b) hearing on the testimony of M.S., K.M.H., and A.R. Outside of the jury’s presence, a Rule 404(b) proffer was made and the circuit judge ruled that "I’m going to allow her to testify....”

. Unlike M.S., K.M.H., and A.R., Green did not cross-examine P.B.

. P.B. testified that she told her mother that she "would get along with [Green] as long as [her mother] was living.” When her mother died, P.B., then-forty-two years old, reported the incidents of sexual abuse to DHS.

. Moreover, Jury Instruction C-5 stated:
[t]he [c]ourt instructs the jury that the testimony of the [S]tate’s witnesses, [K.M.H.], [M.S.], [A.R.], and [P.B.] regarding alleged acts of [Green] were offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident regarding [Green]. You may give the testimony such weight and credibility as you deem proper under the circumstances. However you cannot and must not consider the testimony in any way regarding whether or not [Green] is guilty or not guilty [of the crime] for which he is presently on trial.

. The examples of other purposes listed in Rule 404(b) are sometimes incorrectly referred to as exceptions. They are not exceptions (like those identified in 404(a)(l-3)), but rather evidence admitted for other purposes.

. Unfortunately, the intrafamilial context is fertile ground for sexual abuse and provides circumstances which are particularly problematic. As the testimony of D.W., M.S., A.R., and P.B. reflects, victims are just as likely not to be believed (creating a fear of being spurned or castigated for their allegations), as to be taken seriously. This dichotomy offers a measure of protection not available to a stranger, for many instances of abuse will either go altogether unreported by victims, or unreported by family members who fail to contact authorities, as they are tom by the potentially conflicting personal ramifications of contacting DHS and/or law enforcement and their interests in how publicizing the revelation may change their lives. The dilemmas are myriad (e.g.. What social stigma may attach to our,family? Is the person I love going to jail? How will I provide for myself? Do I risk physical or mental abuse if I report the incident?).

. In each of these circumstances, Green was acting as an adult to a child or, during the incidents involving P.B., as a decidedly older male to a significantly younger female.

. The regularity of Green's sexual abuse was directly connected to the availability of the vulnerable, young, female family members.

. These incidents reflect similar instances of Green grooming these victims, gradually increasing the degree of contact.

. Relatedly, Green bribed M.S. in an effort to induce her to recant her allegations of sexual abuse. Thus, D.W. and two victims of other sexual offenses by Green similarly were encouraged not to report or recant by Green’s inducements of either a carrot (financial reward) or a stick (physical harm).

. "Similar” is defined as "[rjesembling though not completely identical.” Webster's II New College Dictionary 1029 (2001). Clearly, there is an unequivocal resemblance between the incidents at issue and the other sexual offenses.

. For example, the evidence of this "similar misconduct ... supports] an inference ... of a common plan, scheme, or system[,]” utilized “repeatedly to perpetrate separate but very similar crimes.” People v. Sabin, 463 Mich. 43, 614 N.W.2d 888, 899-900 (2000) (citing State v. Lough, 125 Wash.2d 847, 889 P.2d 487 (1995); People v. Ewoldt, 7 Cal.4th 380, 27 Cal.Rptr.2d 646, 867 P.2d 757 (1994)). In Sabin, the defendant was convicted of sexually assaulting his thirteen-year-old daughter. See Sabin, 614 N.W.2d at 893. At trial, the defendant's former stepdaughter was allowed to testify that the defendant had sexually abused her from kindergarten until seventh grade, with the trial court finding that the stepdaughter's testimony was relevant to show the defendant’s "plan, scheme, or system.” Id. at 893, 898. On appeal, the Michigan Supreme Court affirmed. See id. at 899-901. The Michigan Supreme Court rejected the notion that the "plan” exception under Rule 404(b) requires a "single continuing conception or plot” between the prior acts and the charged offense. Id. at 899-900. See also Fisher v. State, 532 So.2d 992, 994, 999-1000 (Miss.1988) (affirming admissibility of similar-misconduct evidence to show the existence of a “plan” for assaulting women where the prior act and the charged offenses bore substantial resemblance but did not comprise a single continuing plot). While acknowledging that there were some dissimilarities between the defendant’s alleged assault of his daughter and his alleged abuse of his former stepdaughter, that court found there were "sufficient common features to infer a plan, scheme, or system to do the acts.” Sabin, 614 N.W.2d at 901. According to that court, "[o]ne could infer from these common features that defendant had a system that involved taking advantage of the parent-child relationship, particularly his control over his daughters, to perpetrate abuse.” Id.
Relatedly, "motive” involves "[a]n impulse, as an emotion, desire, or psychological need, acting as incitement to action.” Webster's II New College Dictionary at 715. *551 The "seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles[,]” is probative regarding motive. Gore, 37 So.3d at 1186 (quoting Driggers, 554 So.2d at 726).
Finally, even the dissent concedes that "it may be true that the defenses raised by Green conceivably created some issue of material fact other than character, that arguably would have fit one or more of the enumerated exceptions under Rule 404(b)....” (Kitchens Op. at ¶ 52).

. Under Rule 401, "relevant evidence” is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.” Miss. R. Evid. 402. Contrary to the dissent's contention that this evidence "was not, by definition, probative!,]” these other crimes, wrong, or acts were relevant to (and, thus, admissible under) the nonexclusive, noncharacter purposes listed in Rule 404(b). (Kitchens Op. at ¶ 51). See footnote 19 supra.

. Contrary to the dissent's contentions otherwise, it is similarity (defined in footnote 18 supra), and not the "same specific conduct!)]'' which is the relevant inquiry regarding other sexual offenses. (Kitchens Op. at ¶ 55) (emphasis added). Furthermore, the dissent erroneously argues remoteness and "that Green was neither charged nor convicted concerning any of these accusations.” (Kitchens Op. at ¶ 56). As to remoteness, Gore provided that the central inquiry is whether "the incidents are all within the same time period in terms of the victims' lives [,] ” and that "[w]here the competency of evidence is doubtful because of remoteness, the better practice is to admit the evidence, leaving it to the jury to determine its credibility and weight.” Gore, 37 So.3d at 1186 (quoting Ex parte Register, 680 So.2d 225, 228 (Ala.1994); Driggers, 554 So.2d at 727) (emphasis added). Additionally, in Gore, the defendant had never been charged or convicted.

. Rule 803(25) provides that:
[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(25) Tender years exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
Miss. R. Evid. 803(25).