# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01627-COA

EDWINA ROBBINS                                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2015 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SIMPLE ROBBERY AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 08/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Edwina Robbins appeals the judgment of the Perry County Circuit Court adjudicating her guilty of robbery. She argues that the trial court erred by admitting a witness's testimony. In addition, she argues that the evidence was insufficient to support the verdict, or

alternatively, the verdict was against the overwhelming weight of the evidence.[1]

¶2.     Finding no error, we affirm.

FACTS

¶3.     On February 2, 2015, a Perry County grand jury returned a joint indictment against Robbins, Jonathan Hinton, and Samuel Moody, charging them with one count of armed robbery under Mississippi Code Annotated section 97-3-79 (Rev. 2014) and one count of conspiracy to commit armed robbery[2] under Mississippi Code Annotated section 97-1-1 (Rev. 2014).  Specifically, the indictment alleged that on November 21, 2014, Robbins, Hinton, and Moody[3] robbed Lisa Barnes of her car keys and approximately forty dollars by the exhibition of a knife.  Hinton pleaded guilty and testified as a witness for the State in Robbins's trial.  The charges against Moody were still pending at the time of Robbins's trial. Jaylon Bolton, Robbins's daughter's boyfriend, was present during the robbery but was not charged.  He testified during Robbins's trial.  Although the facts were disputed in several aspects and the testimony conflicting in some instances as to the extent of Robbins's involvement in the robbery, all of the witnesses' testimonies were consistent with respect to the following facts:

> On November 21, 2014, Barnes went to Robbins's home to discuss a debt that
> she owed Robbins for drugs—crack cocaine— that Robbins had purchased for

[1] Since issues one and two are related, we will discuss them together.

[2] The State chose not to prosecute the conspiracy charge.

[3] Moody was Robbins's boyfriend and lived with her.

2

her. After talking with Barnes for a few minutes, Robbins stepped into another room, leaving Barnes sitting at her kitchen table. Barnes was then struck from behind in the head and neck by Hinton. Hinton threatened Barnes with a knife[4] during the encounter. Hinton then took from Barnes, or was given, forty dollars. Robbins returned from the other room while Hinton held Barnes, threatening her and telling her to give him money.

¶4.     Hinton testified that he searched Barnes's shirt for money and that she gave him forty dollars out of her pocket; he took her car keys. He then went out to Barnes's vehicle to search her purse for anything of value. He stated that he gave the keys to Moody and the knife to Bolton, so he could hide it. He also testified that prior to Barnes's arrival, Robbins had told him that a white lady was coming over to buy drugs, and she wanted him to rob her.

¶5.     After the robbery, Barnes left and went to a friend's house because she was scared to go back to her home. She called the police later that night and alerted them of the robbery. Later, Robbins was arrested.

¶6.     During the trial, Robbins, Barnes, Hinton, and Bolton all testified as to the events of that night. Over the defense counsel's objection, Thado McSwain testified that on the same night that Barnes was robbed, he was assaulted by Hinton when he went to Robbins's home to discuss money that he owed her. He stated that Robbins had called him to stop by and pay her the thirty dollars that he owed her. He testified that when he arrived Robbins and Hinton were there, and Hinton jumped at him as if to threaten him, asking him to pay money. He

---

[4] There is conflicting testimony as to whether Hinton held a knife to Barnes's throat, whether the sheath had been removed from the knife, and who the owner of the knife was; however, there is no dispute that Hinton threatened Barnes with a knife.

also stated that Hinton had his hand behind Hinton's back, so he could not tell if he had a weapon or not. He also testified that as he left out the door, Hinton kicked him in his butt. He later called the police to report what he viewed as an attempted robbery and assault. There is no information in the record whether any charges were pursed with respect to his 911 call.

¶7.    The essence of the State's theory of the case was that Robbins was a drug dealer, Barnes owed Robbins money for drugs, and Hinton—at Robbins's direction—robbed Barnes with a knife for money owed to Robbins. However, Robbins testified that she did not order Hinton to rob Barnes, she tried to help Barnes, and encouraged her to call the police. Prior to trial, Robbins's counsel made an ore tenus motion in limine to prohibit other-bad-acts evidence; specifically, (1) evidence that Robbins was a drug dealer, and Barnes owed Robbins money for drugs, and (2) evidence that, after Barnes left Robbins's house, McSwain later came to Robbins's house and was threatened/robbed by Hinton for money that he owed Robbins. Robbins's counsel argued that evidence that Robbins was a drug dealer, Barnes's debt to Robbins was for drugs, and McSwain's separate, uncharged, alleged robbery was irrelevant as to whether Robbins robbed Barnes or directed Hinton to do so, and it would be prejudicial to Robbins's trial. The State argued that the evidence of Robbins's drug dealing was "inextricably intertwined" with the charges, was admissible as to motive and intent, and was necessary to explain why Barnes went to Robbins's house. The court overruled both of Robbins's motions and admitted the evidence.

¶8. Robbins was convicted of simple robbery and sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC). Hinton pleaded guilty to armed robbery and was sentenced to fifteen years, with nine years suspended. Despite Robbins's argument—that the State had not proven its burden—her motion for a new trial was denied by the court. This appeal followed.

## DISCUSSION

I.  *Whether the court properly admitted the testimony of a witness who testified concerning bad acts committed by Robbins.*

¶9. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the [c]ourt will not reverse his ruling." *Green v. State*, 89 So. 3d 543, 549 (¶15) (Miss. 2012).

¶10. Robbins argues that the trial court erred in allowing the State to (1) introduce evidence that Robbins was a drug dealer and that Barnes's debt to Robbins was for drugs, and (2) ask questions and elicit evidence about a separate incident in which Hinton and Robbins allegedly threatened and/or robbed another person, McSwain, for money that he owed to Robbins. She contends that this evidence was inadmissible bad-acts evidence under Mississippi Rule of Evidence 404(b),[5] and it was more prejudicial than probative under

---

[5] "Rule 404(b) provides that: evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Green*, 89 So. 3d at 549 (¶16).

Mississippi Rule of Evidence 403. She further contends that allowing the State to introduce this evidence permitted the jury to infer that she was a bad person and was more likely to have committed the robbery. In addition, with respect to McSwain, she contends that the evidence allows for the inference that because Hinton and Robbins threatened or attempted to rob McSwain, it was more likely that Hinton and Robbins robbed Barnes.

¶11. The State argues that the trial court made an implicit finding that the testimony allowed was more probative than prejudicial, and any error due to the failure to conduct a Rule 403 balancing analysis on the record was harmless error. The State asserts that the evidence was admissible under Rule 404(b) to show that the same modus operandi was used indicating a "plan" being used by Robbins to collect money. The trial court's care in determining what evidence was admissible, and what testimony could be given is suggestive of the trial court's determination that the evidence was more probative than prejudicial and therefore admissible. In the alternative, any error suffered was harmless, as the State contends that the evidence of Robbins's guilt was overwhelming. Barnes's testimony, Bolton's testimony, Hinton's testimony, the preserved text messages to Lisa Barnes, and the evidence of the knife constitute overwhelming evidence of Robbins's guilt.

¶12. We find no error with the court's resolution of these evidentiary matters; as such, this issue is without merit.

> II. *Whether the verdict was sufficient on each element of proof; and, whether the verdict was supported by the overwhelming weight of the evidence.*

6

¶13. In addressing the sufficiency of the evidence, "[t]he Mississippi Supreme Court has stated that 'the relevant question is whether[,] after viewing the evidence in the light most favorable to the prosecution[,] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Hoffman v. State*, 189 So. 3d 715, 720 (¶21) (Miss. Ct. App. 2016) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). As the record reflects, the jury was instructed that if it did not find Robbins guilty of armed robbery, it could find her guilty of the simple robbery, a lesser-included offense of armed robbery.[6] "Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery." Miss. Code Ann. § 97-3-79 (Rev. 2014). Considering the evidence presented in the light most favorable to the State, we find that there was sufficient evidence to convict Robbins of simple robbery.

¶14. In reviewing a challenge to the weight of the evidence, the verdict may be disturbed "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). "[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence

---

[6] "The Mississippi Supreme Court has stated that 'a lesser included offense by definition is one in which all its essential ingredients are contained in the offense for which the accused is indicted, but not all of the essential ingredients of the indicted offense.'" *Fulcher v. State*, 805 So. 2d 556, 560 (¶10) (Miss. Ct. App. 2001).

7

preponderates heavily against the verdict." *Green*, 89 So. 3d at 554 (¶29).

¶15.   We find, based on the evidence discussed earlier in this opinion, that allowing the verdict to stand would not sanction an unconscionable injustice.  This issue is without merit. Therefore, we affirm Robbins's conviction of robbery and sentence of fifteen years in the custody of the MDOC.

¶16.   **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR,  GREENLEE AND WESTBROOKS, JJ., CONCUR.  WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**