# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00684-COA

**DAVID PATRICK BOONE A/K/A DAVID P. BOONE A/K/A DAVID BOONE**                                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2023 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEVEN E. FARESE SR. |
| | JOSEPH WHITTEN COOPER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | ROBERT R. MORRIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/07/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND WEDDLE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A DeSoto County Circuit Court jury found David Boone guilty of two counts of gratification of lust for fondling his minor daughter.  The court sentenced Boone to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC) for Count I, to be followed by ten years of post-release supervision for Count II.[1]  Boone appeals his convictions.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

---

[1] Boone was also ordered to pay fines and to register as a sex offender.

¶2. Boone and his former wife, Penny, have two daughters, Marcia and Sasha.[2] The couple separated in 2010 when Marcia was six years old and when Sasha was three years old. The couple had a contentious divorce, lasting from 2010 to 2013. A guardian ad litem (GAL), Robin Minyard, was appointed in June 2012 after a therapist for the children had a private conversation with the presiding chancellor. Upon the GAL's recommendation, the DeSoto County Chancery Court temporarily required supervised visits between Boone and his daughters in 2012. The girls would stay with Boone at his apartment every other weekend during the school year and every other week during the summer. A final decree of divorce was entered on June 7, 2013, with sole physical custody given to Penny.

¶3. In August 2020, sixteen-year-old Marcia disclosed to her mother that Boone had sexually abused her and her sister. Penny filed a report with the Southaven Police Department. On June 9, 2021, a DeSoto County grand jury indicted Boone on two counts of gratification of lust (fondling).

¶4. The defense filed a pretrial motion in limine on March 23, 2023, seeking to exclude any prior bad-acts testimony by Sasha that her father had "allegedly touched her inappropriately on her breasts at an unknown date." The motion argued that "any proposed evidence of prior bad acts does not conform to the Mississippi Rules of Evidence and should be excluded." The defense also noted in the motion that the GAL's extensive report

---

[2] The Court will use pseudonyms to refer to the minors involved in this case to protect their identities.

contained no allegations of sexual abuse.[3]

¶5.    The trial was held on March 27, 2023.  Prior to any testimony, the trial court heard arguments on the defense's motion in limine.  The court examined Sasha's anticipated testimony using Mississippi Rule of Evidence 403 and found that the potential for unfair prejudice did not substantially outweigh the probative value of the evidence.  The court denied the motion in limine, concluding that Sasha's testimony "would be admissible under common plan or scheme" and that "[t]he State may prove commonalities for the purpose of motive, intent, plan, identity, absence of mistake or lack of accident."

### Detective William Kjellin's Testimony

¶6.    Detective William Kjellin with the Southaven Police Department was the investigator for Marcia's case.  During his investigation of the sexual-assault allegations, he discovered "there was an investigation in Tennessee involving" Sasha.  When asked on cross-examination about his investigation report, he said Marcia's mother only reported "the fondling of the breast"; she did not mention touching of the penis.  However, Detective Kjellin's recollection of Marcia's statement in her 2020 forensic interview was that Boone "made her touch his penis."  Detective Kjellin had subpoenaed a copy of a prior forensic interview of Marcia, but he was told that there was no record of it.  When later recalled by the defense as a witness, the detective clarified (after reviewing the 2020 forensic interview)

---

[3] Boone filed several other motions in limine that are not relevant to the issues raised in this appeal.

that Marcia did not explicitly state she touched Boone's penis. He explained, "In the forensic interview, [Marcia] stated that [Boone] took her hand. He was [lying] on the couch in his boxers with the slit open, and he took her hand and put it in between the slit of his boxers."

***Marcia's Testimony***

¶7.    Marcia, now eighteen years old, testified that Boone fondled her after her parents' separation in 2010. The two girls would sleep with Boone in his bed, with Sasha "on one side of [Boone]" and Marcia "on the other [side]." Marcia said that her father "would start by rubbing [her] back," then "move to the front of [her] shirt and then feel . . . where [her] breasts would be." Marcia testified that as to "the first instance [she] was talking about, that happened from the time [she] was six up until the time [she] was ten." A second instance occurred when Marcia was "about seven or eight." Boone and Marcia were sitting on the living room couch at his apartment. Marcia said, "He grabbed my hand, and he placed it in his boxers, and I had touched his penis."

¶8.    When asked why she never reported these incidents to a teacher or a counselor, Marcia replied that she "just kept it down because [she] really didn't realize it was such a bad thing until [she] got older." She finally told her mother when she was sixteen "[b]ecause [she] realized it was wrong and it wasn't okay." Marcia also claimed she had told a forensic interviewer "what was going on" when she was approximately seven or eight, but "nothing was done about it." She claimed that she told the interviewer "that he would make my girl parts bleed." To impeach her testimony, the defense provided Marcia with a report from

4

Tupelo Forensics that stated she had denied any abuse. However, the trial judge clarified after her testimony concluded that she had been "cross-examined on her sister's report, not her own forensic report." When asked about the GAL's report, Marcia said that her dad "coach[ed]" her to say that he was "fun."

### Sasha's Testimony

¶9. Prior to fifteen-year-old Sasha's testimony, the trial court addressed the issue of the limiting instruction for her testimony. The trial judge determined "that the testimony . . . would be admissible for motive, opportunity, proof of common plan or scheme." Sasha testified that when she was younger, she slept in Boone's bedroom because she did not like sleeping alone. She said that Boone "would tell [her] that he was going to give [her] a back scratching, and he would put his hand under [Sasha's] shirt and start scratching [her] back." Boone would "then tell [Sasha] to turn over and start rubbing [her] stomach," and "he would slowly move his hand up [her] shirt onto [her] breast." Sasha also recalled an occasion where she wore a bra because "the things that [Boone was] doing" had "made [her] uncomfortable . . . and [she] thought a bra would help prevent this." She said that when Boone "put his hand under [her] shirt to give [her] a back scratching," he asked, "Eww, why are you wearing a bra?"

¶10. Sasha testified that the inappropriate touching "would happen on multiple visitations." Sasha did not disclose the abuse to Child Protection Services "[b]ecause [she] was scared, and [she] figured that [she and Marcia] would still have to go see him, and [she] was scared

of what [Boone] would do."

### *Minyard's Testimony (GAL)*

¶11.    Minyard testified that she had been appointed as the guardian ad litem (GAL) during the divorce proceedings because a therapist had reported allegations of sexual abuse privately to the chancery court.  However, Minyard said that neither of the girls made any allegation to her of any criminal sexual behavior committed by Boone.  Minyard recalled a specific occasion when she talked to Marcia and Sasha at Applebee's.  She observed that the girls seemed "delighted to see him, and there was no sign of uneasiness."  Minyard acknowledged on cross-examination that her initial recommendation to the chancery court had been to suspend Boone's visitation until a hearing could be held.

### *Barry Hunt's Testimony*

¶12.    The Chancery Court had appointed Barry Hunt to supervise the visitations between Boone and his daughters in 2012.  Hunt said the girls "loved being with their father."  Hunt never saw anything that caused him concern.  He noted that Marcia was "strong-willed," and Sasha "was a very subdued girl."  Hunt admitted that he only supervised them "through the day."

¶13.    The defense rested and moved for a directed verdict of acquittal.  The trial court denied the motion.  The jury found Boone guilty of both charges.  In his post-trial motion for judgment notwithstanding the verdict or a new trial, Boone claimed that (1) the verdict was against the overwhelming weight of the evidence, (2) the court erred in denying his motion

6

in limine, and (3) the court erred in giving the State's jury instruction S-6.[4] At the sentencing hearing on May 24, 2023, the trial court denied Boone's motion. For Count I, the court sentenced Boone to serve fifteen years in the custody of the MDOC. For Count II, the court sentenced Boone to ten years of post-release supervision (five years reporting and five years non-reporting) upon release from MDOC's custody. Boone appeals his convictions.

## DISCUSSION

I. **Whether the verdict was against the overwhelming weight of the evidence.**

¶14. Boone argues that the verdict is against the overwhelming weight of the evidence because (1) Marcia's prior claims during a 2012 forensic interview were never corroborated; (2) the GAL testified that Marcia never disclosed any abuse to her or the forensic interviewer; (3) Tennessee authorities investigated Sasha's abuse claim, but no charges were filed; and (4) Marcia's allegations "were discredited and contradicted by other credible evidence."

¶15. In reviewing a challenge to the weight of the evidence, the evidence is viewed "in the light most favorable to the verdict." *Webb v. State*, 339 So. 3d 118, 129 (¶43) (Miss. 2022). "[W]e will only reverse a jury's verdict 'when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Crawford v. State*, 282 So. 3d 1230, 1238 (¶27) (Miss. Ct. App. 2019) (quoting *Forrest v.*

---

[4] Boone also claimed that the trial court erred in refusing two of his jury instructions, D-2 and D-8, but he has not raised this argument on appeal.

*State*, 57 So. 3d 36, 38 (¶9) (Miss. Ct. App. 2011)).

¶16.    Boone was charged and convicted of two counts of gratification of lust under Mississippi Code Annotated section 97-5-23 (Rev. 2014). The indictment alleged that between January 2009 and December 2012, Boone "willfully, unlawfully and feloniously, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires" placed his hands on Marcia's breast (Count I) and "plac[ed] his penis to the hands of [Marcia]" (Count II).[5]

¶17.    Marcia's testimony at trial was consistent with the information she provided during her 2020 forensic interview.  Marcia testified at trial that her father touched her on her breasts on more than one occasion and that he had her put her hand in his boxers to touch his penis when she was seven or eight years old.  Boone acknowledges the Mississippi Supreme Court's holding that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006).  Boone claims, however, that Marcia's allegations "were discredited and contradicted by other credible

---

[5] Section 97-5-23(1) defined fondling as follows:

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch[,] or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent, . . . shall be guilty . . . .

Miss. Code Ann. § 97-5-23(1) (Rev. 2014).

8

evidence because the allegation was investigated contemporaneously with the dates of the alleged acts, and all acts of abuse were denied by this same alleged victim years prior." In other words, he argues that Marcia's testimony was discredited or contradicted because the previous investigations "yielded no charges."

¶18. Marcia's prior forensic interview from 2012 was not admitted into evidence.[6] Although the GAL testified that she saw no report of sexual abuse in the "synopsis" of Marcia's forensic interview, Minyard admitted that she had no first-hand knowledge of what Marcia said in the forensic interview. As Boone admits, Marcia "unequivocally" testified that she did disclose the sexual abuse to the forensic interviewer in 2012, telling "her that he touched me" and "that he would make my girl parts bleed." She testified that during the interview,

> [t]here was a diagram, and we identified certain areas, and we went over what areas were okay to touch and what areas were not okay to touch, and when she asked me if he had ever touched me in those areas, I told her yes, and when she asked me if I had ever touched an area that I wasn't supposed to on him, I said yes.

As noted, the report that the defense used to try and impeach Marcia's testimony was not her interview. With no evidence of Marcia's former forensic interview, there is no evidence to weigh against the jury's verdict. We also find Marcia's failure to disclose abuse to the GAL does not weigh against the verdict. Marcia explained that she did not disclose the abuse

---

[6] Detective Kjellin said he could not obtain the interview. At trial, defense counsel tried to impeach Marcia's testimony using her sister's forensic interview, not her own.

before 2020 because she "tried too hard to excuse it because [she] wanted a relationship with [her father.]" She also said her father would "coach" her for the interview and promise her rewards. Minyard acknowledged that the failure to disclose an allegation of sexual abuse did not mean it did not happen.

¶19. Viewing the evidence in the light most favorable to the verdict, we cannot say that allowing the verdict to stand would sanction an unconscionable injustice. We find this issue lacks merit.

**II.     Whether the trial court erred in denying the motion in limine to exclude Sasha's testimony about prior bad acts.**

¶20. As discussed, the trial court denied the defense's motion in limine, finding Sasha's testimony regarding any prior bad acts was relevant and admissible. A limiting instruction (Jury Instruction 12) was also given, informing the jury that Sasha's testimony was "to be considered only for the limited purpose of showing proof of motive, opportunity, common scheme[,] or plan" and that the jury "must not simply infer that the Defendant acted in conformity with his previous acts[.]"

¶21. This Court reviews a trial court's ruling "on the admission of prior bad-acts evidence for abuse of discretion." *Bradshaw v. State*, 371 So. 3d 822, 836 (¶41) (Miss. Ct. App. 2023). "Under Mississippi Rule of Evidence Rule 404(b), 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident,' are proper reasons to present prior-bad-acts evidence to the jury." *Id*. at 837 (¶42) (quoting M.R.E. 404(b)). "The court undertakes a Rule 403 analysis, and a limiting instruction must be

10

presented to distinguish the prior bad acts." *Id.* (citing *Smith v. State*, 326 So. 3d 510, 517-18 (¶20) (Miss. Ct. App. 2021)). Thus, "[s]uch evidence is admissible if 'properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction.'" *Id.* at 837 (¶41) (quoting *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008)).

¶22. Boone admits that the trial court "conducted the proper balancing test and also properly stated the merits of the limiting instruction." However, he argues that because "the State was attempting to use the younger daughter's allegation to show that [he] acted in conformity with his propensity for pedophilic sexual activity," Sasha's testimony should not have been allowed and that he is entitled to a new trial without that testimony.

¶23. In *Green v. State*, 89 So. 3d 543 (Miss. 2012), the supreme court held that "overwhelming similarities" between prior instances of sexual misconduct and the charged offense "undeniably bring the testimony of these other victims within the purview of admissibility under Rule 404(b)." *Id.* at 550 (¶17). In *Green*, the defendant was charged with gratification of lust and sexual battery of his minor stepdaughter. *Id.* at 545 (¶1). The State offered testimony at trial of female witnesses related to the defendant who alleged that the defendant had "sexually abused them in a similar manner . . . when they were near the age of puberty," around the same age as the victim. *Id.* at 546 (¶4). Finding the testimony "more probative than prejudicial," the trial court reasoned, "[T]he more people you have, the more prejudicial it is, but the more people you have, . . . the more likely it is that it is a

11

reliable indicator of a pattern or plan." *Id.* at 548 (¶10). The supreme court affirmed the trial court's decision, noting that "evidence of this 'similar misconduct supports an inference of a common plan, scheme, or system,' utilized 'repeatedly to perpetrate separate but very similar crimes.'" *Id.* at 550 n.19. The *Green* Court also held that "the mere fact that evidence offered for noncharacter purpose(s) bears some reflection on the defendant's character does not bar its admissibility under Rule 404(b)" but must be considered by the trial court under Rule 403. *Id.* at 551 (¶18).

¶24. Furthermore, the supreme court has "emphasized that any evidence that tends to show a seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles[] is probative regarding motive." *Webb*, 339 So. 3d at 125 (¶18) (quoting *McGrath v. State*, 271 So. 3d 437, 442 (¶18) (Miss. 2019)). "And a jury may hear evidence of a defendant's means of accomplishing these activities if they bear substantial resemblance to each other and with the present offense." *Id.* (internal quotation marks omitted) (quoting *McGrath*, 271 So. 3d at 442 (¶18)).

¶25. Here, Sasha's testimony bore "overwhelming similarities" to the allegations of sexual abuse reported by her sister Marcia. As the State notes, "[b]oth girls were prepubescent when the abuse took place." Also, the incidences of sexual abuse occurred within the privacy of Boone's home, and "his method of sexually abusing Sasha was identical to his means of abusing Marcia" (i.e., rubbing the girls' backs and moving his hand up the shirt to touch their breasts). In *McGrath*, the supreme court found the "familial relationship and position" held

by the abuser (stepfather) to be "particularly relevant, not only for the substantive charges, but also for Rule 404(b) purposes." *McGrath*, 271 So. 3d at 441 (¶16). "Sexual acts which demonstrate '*a common plan, scheme, or system* . . . utilized . . . repeatedly to perpetrate separate but very similar crimes,' such that the defendant 'had a system that involved taking advantage of the parent-child relationship' are admissible." *Id*. (quoting *Young v. State*, 106 So. 3d 775, 779 (¶15) (Miss. 2012)). Like the defendant in *McGrath*, Boone's "motives and opportunity were similar—he used his position of trust, while alone with his [daughters] to sexually abuse them." *Id*. at 442 (¶18).[7]

¶26. Accordingly, we find no abuse of discretion in the trial court's ruling that this testimony was admissible.

### III. Whether the trial court erred in giving Jury Instruction 13.

¶27. Jury Instruction 13 (S-6) stated: "The Court instructs the jury that, under Mississippi law, the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence." Defense counsel objected to the instruction at trial, arguing that the instruction was "impermissible bolstering of the accused and the indictment's testimony." The trial court overruled the objection and gave the instruction, finding that it was "an appropriate instruction on the law."

---

[7] We also find no merit to Boone's argument that her testimony contradicted her statement to Tennessee authorities, particularly since this statement was not included in the record. Sasha also testified that she was scared to disclose the abuse. *See Bateman v. State*, 125 So. 3d 616, 625 (¶27) (Miss. 2013) (holding that "[i]t was the jury's duty to weigh the credibility of" a sexual-abuse victim's prior statements and her trial testimony).

13

¶28. Boone contends on appeal that the instruction "is proper to be included as a jury instruction as long as the Court also instructs the jury that they are the 'sole and exclusive judges of credibility of each witness.'" Boone concedes that the trial court included that language in Jury Instruction 1, but he further argues that while this "instruction is a comment on the maxim appellate courts utilize when determining whether or not to uphold a jury verdict," it "has no place in the hands of the jury who[m] it can only confuse." He therefore asserts that giving this instruction was prejudicial and warrants a new trial.

¶29. We find the State is correct that Jury instruction 13 "is an accurate statement of Mississippi law." As discussed in Issue I, the Mississippi Supreme Court held that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Miley*, 935 So. 2d at 1001 (¶10). The supreme court has further concluded that a jury instruction containing this language "did not constitute an improper comment on the weight of the evidence," and in "reviewing the jury instructions as a whole," the trial court's giving of the instruction was not an abuse of discretion. *Pitts v. State*, 2901 So. 3d 751, 758-59 (¶39) (Miss. 2020); *see also Barnes v. State*, 348 So. 3d 974, 983 (¶14) (Miss. Ct. App. 2022) (holding that the trial court did not err in giving jury instruction containing this precise language). We therefore find no abuse of discretion in the trial court's giving of Jury Instruction 13.

¶30. Finding no error, we affirm Boone's convictions and sentences.

¶31. **AFFIRMED.**

14

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. ST. PÉ, J., NOT PARTICIPATING.**