# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01417-SCT

*HOWARD LINDSEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2015 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | STEPHANIE BRELAND WOOD |
| | CHRIS HENNIS |
| | OTTOWA E. CARTER, JR. |
| | CATOUCHE J. BODY |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MERRIDA COXWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DANIEL CHRISTOPHER JONES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/26/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.

## WALLER, CHIEF JUSTICE, FOR THE COURT:

¶1.     On July 23, 2015, a Covington County jury found Howard Lindsey guilty of two counts of gratification of lust and two counts of sexual battery.  On appeal, Lindsey argues that the jury's verdict is contrary to the overwhelming weight of the evidence.  Finding no issue with the verdict, we affirm Lindsey's convictions and sentences.

## FACTS & PROCEDURAL HISTORY

¶2. This case involves a total of four alleged sexual offenses committed by Howard Lindsey against two minor female victims. On January 13, 2015, Lindsey was indicted for one count of gratification of lust and one count of sexual battery against his granddaughter M.L, as well as one count of gratification of lust and one count of sexual battery against M.L.'s cousin T.P.[1] The alleged offenses against M.L. occurred "during and about 2013 through and about 2014," and the alleged offenses against T.P. occurred "during and about December 2013." At the time of these offenses, M.L. was between eleven and twelve years old, and T.P. was fourteen years old.

¶3. Lindsey's trial commenced on July 22, 2015. M.L. and T.P. were the State's only witnesses. By the time of trial, M.L. was thirteen years old, and T.P. was fifteen years old. Lindsey called three witnesses in his defense: M.L.'s older brother Antiquez Lindsey, M.L.'s uncle Sedrick Lindsey, and M.L.'s cousin Sedrianna Lindsey. At the conclusion of trial, the jury returned a verdict finding Lindsey guilty on all counts. After the trial court denied his post-trial motions, Lindsey filed a timely notice of appeal with this Court. Lindsey's sole issue on appeal is whether the jury's verdict is against the overwhelming weight of the evidence.

**STANDARD OF REVIEW**

¶4. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an

---

[1]We will refer to the minor victims by their initials to protect their identities.

2

unconscionable injustice." ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005) (citation omitted). The evidence must be weighed in the light most favorable to the jury's verdict. ***Id.*** If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial, but this remedy should be used only in exceptional cases where the evidence "preponderates heavily against the verdict." ***Id.*** (citing ***McQueen v. State***, 423 So. 2d 800, 803 (Miss. 1982)).

## DISCUSSION

¶5.     Lindsey was charged with two counts of gratification of lust and two counts of sexual battery.  To find Lindsey guilty of gratification of lust, the jury was required to find (1) that Lindsey touched M.L. and T.P. with any part of his body or with any object "for the purpose of gratifying his . . . lust or indulging in his . . . depraved licentious sexual desires," (2) that Lindsey was above the age of eighteen, and (3) that M.L. and T.P. were under the age of sixteen. Miss. Code Ann. § 97-5-23(1) (Rev. 2014). To find Lindsey guilty of sexual battery, the jury was required to find (1) that Lindsey engaged in sexual penetration with M.L. and T.P., (2) that Lindsey was at least thirty-six months older than T.P., and (3) that he was at least twenty-four months older than M.L.  Miss. Code Ann. § 97-3-95(1)(c), (d) (Rev. 2014).  The State relied on the testimonies of M.L. and T.P. to prove the elements of these crimes.

¶6.     At trial, M.L. testified that Lindsey had molested her on several occasions, but she was unsure when this abuse began or how many times it had occurred.  However, she was able to describe at least two particular incidents of abuse.  She testified that, while she was living in Hattiesburg with her mother, Lindsey touched her breast with his hand. She also stated that

3

Lindsey had touched her vagina and breasts with his hands and mouth, put his penis in her vagina, and put his mouth on her vagina.

¶7. The second incident occurred at Lindsey's house near Seminary. At this point, M.L. was twelve years old and was living in Collins. Lindsey asked M.L.'s mother if M.L. could go to a football game with him. M.L. did not want to go by herself, so she asked her cousin Sedrianna to go with her. Sedrianna and her father Sedrick, who is Lindsey's son, live next door to Lindsey. M.L. testified that she waited at Lindsey's house while Sedrianna got ready. At some point, Lindsey put his mouth on M.L.'s vagina. He then put his penis in her vagina and put his mouth on her breasts. M.L. said she was alone in the house with Lindsey at this time. Lindsey told M.L. not to tell anyone about what had happened. M.L. also testified that Lindsey offered her money and a cell phone if she did not tell anyone about these incidents.

¶8. M.L. testified that she did not tell anyone about Lindsey's abuse because she was afraid that Lindsey would stop providing financial support to her mother. She finally decided to say something when her aunt asked her why she was afraid to visit Lindsey's house one night.

¶9. M.L. also testified about an occasion when Lindsey had molested T.P. In December 2013, T.P. visited M.L.'s family on two occasions. On the first occasion, Lindsey took the girls to Hattiesburg to go shopping. During this trip, M.L. testified that Lindsey asked her to "hook him and [T.P.] up." On the second occasion, M.L. and T.P. went to Lindsey's house and hung out in the "club" behind his house. M.L. and T.P. both described the "club" as a shed with a pool table and kitchen. M.L. had Lindsey's cell phone at this time. The cell phone rang, so M.L. asked T.P. to bring it to Lindsey. T.P. was gone for a long time, so M.L. went

4

to check on her. Inside the house, M.L. testified that she saw Lindsey and T.P. in Lindsey's bedroom, and Lindsey was putting his penis in T.P.'s vagina. M.L. and T.P. never talked to each other about this incident.

¶10.    T.P. also testified that she had visited M.L. twice in December 2013. She stated that during the first trip, Lindsey tried to persuade her to have sex with him, but she refused. On the second visit, T.P. and M.L. were playing in the "club" behind Lindsey's house when Lindsey's phone rang. T.P. took the phone to Lindsey in his bedroom. Lindsey pulled her into the room, locked the door and tried to have sex with her. He put his hand over her mouth to stop her from screaming. He then put his penis in T.P.'s vagina. T.P. also testified that Lindsey touched her breasts. T.P. stated that she was unsure of Lindsey's exact age but that she knew he was over the age of twenty-one at the time of this incident. T.P. said she did not tell anyone about what had happened because she was afraid that her father would try to kill Lindsey and would be sent to prison.

¶11.    Lindsey called three witnesses in his defense. The defense witnesses' testimonies focused on M.L.'s allegations, particularly the incident before the football game. None of the defense witnesses testified specifically about T.P.'s allegations. M.L.'s older brother Antiquez[2] testified that he could not remember an occasion on which Lindsey was alone with M.L. He stated that either he or his mother always were home when Lindsey came to visit. Antiquez testified that he and M.L. were visiting Lindsey's house one night when M.L. said she was scared to sleep by herself, so they decided to go home. He said he did not know why

[2]Antiquez was eighteen years old at the time of trial. He recently had graduated from high school.

5

M.L. was scared and that it was her idea to visit Lindsey. On cross-examination, Antiquez admitted that he was not always around when Lindsey and M.L. were together. He also stated that he and his mother are disabled and that Lindsey gives his mother financial support. He gave the following explanation for his belief that M.L.'s allegations against Lindsey were fabricated: "[Y]ou don't have to always be there. I mean, if you – I mean, now days girls grow up different. So a girl is going to do whatever she can or say just to get her way."

¶12.　Lindsey's son Sedrick also testified for the defense. Sedrick provided his recollection of events on the night that Lindsey took M.L. and his daughter to a football game. Sedrick testified that M.L. came over to his house to ask his daughter Sedrianna if she wanted to go to the game with her. While Sedrianna was getting ready, M.L. was constantly walking in and out of the house. After Sedrianna got ready, Lindsey came over and picked them up to go to the game. On cross-examination, Sedrick admitted that he was unemployed and that Lindsey gave him money when he needed it. Sedrick admitted that he did not know what M.L. was doing when she was not at his house.

¶13.　Sedrianna Lindsey testified briefly for the defense and generally corroborated her father's testimony. Sedrianna was fourteen years old at the time of trial. She said that M.L. came over to her house and asked her if she wanted to go to the football game, and she said yes. M.L. repeatedly left Sedrianna's room and then returned while Sedrianna was getting ready. After Sedrianna got ready, Lindsey picked up her and M.L. from her house to go to the game.

¶14. On appeal, Lindsey first argues that a new trial is warranted because the State failed to present any physical evidence or other testimony corroborating the testimony of the victims. He also repeatedly points out that no medical evidence of sexual abuse exists in this case. But this argument is easily dismissed. "Our case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Scott v. State*, 728 So. 2d 584, 586 (Miss. 1998). *See also Allman v. State*, 571 So. 2d 244, 250 (Miss. 1990) (finding that the trial court properly refused defendant's proposed jury instruction stating that corroboration of rape victim's testimony was necessary to sustain a conviction). This principle applies "especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." *Id.* Thus, the relevant inquiry in this case is not whether the victims' testimonies were corroborated, but whether they were so discredited or contradicted by other credible evidence that a reasonable jury could not have believed them.

¶15. Lindsey asserts that the victims' testimonies were self-contradictory and inconsistent with their prior statements. After M.L. and T.P. came forward with their allegations against Lindsey, and more than a year before trial, they underwent forensic interviews at the Child Advocacy Center ("CAC"). Lindsey played the video recordings of these interviews during his cross-examination of M.L. and T.P. The victims' statements during their forensic interviews differ from their testimony at trial and, at times, feature their own internal inconsistencies. For example, during her CAC interview, M.L. gave two different versions of her account of Lindsey's sexual misconduct on the night of the football game. In the first

7

version, M.L. never stated that she left Lindsey's house prior to the game, while in the second version she stated that she was at Sedrianna's house when Lindsey called her and told her to come over. In the second version, M.L. stated that T.P. witnessed Lindsey molesting her, but at trial she admitted that T.P. was not there. M.L. also stated during her interview that Lindsey had picked the lock to her bedroom at her mother's house and raped her, but later she stated that Lindsey had raped her in the kitchen. She did not testify directly about either of these incidents at trial. T.P.'s CAC interview contains fewer inconsistencies. In her interview, T.P. stated that, on the first night of her second visit with M.L., Lindsey pulled her into a room and tried to take her clothes off. At trial, T.P. testified that this incident happened on the second night of her second visit. Lindsey also points out that, at trial, M.L. testified that she saw Lindsey molest T.P., while T.P. testified that Lindsey had closed and locked the door to his bedroom when he molested her.

¶16.    While some inconsistencies admittedly exist in the victims' testimonies, we find that the material portions of the victims' testimonies necessary to support the charges against Lindsey were not contradicted or discredited. The inconsistencies in the victims' stories, such as whether M.L. visited Sedrianna's house on the night of the football game or whether Lindsey attempted to undress T.P. on the first or second night of her second visit with M.L., do not tend to make it less likely that Lindsey committed the alleged offenses against the victims. "Such inconsistencies are neither unusual nor grounds for the jury to reject all of their testimony." *Kinney v. State*, 336 So. 2d 493, 497 (Miss. 1976). In addition, M.L.'s testimony corroborated T.P.'s allegations against Lindsey. The proper weight to be assigned

8

to that testimony, based on any alleged inconsistencies, was for the jury to decide. *See McClain v. State*, 625 So. 2d 774, 781 (Miss. 1993) (citations omitted).

¶17.    Nor did the testimony of the defense witnesses discredit the victims' material allegations.  First, none of the defense witnesses provided any testimony discrediting T.P.'s allegations.  As for M.L.'s allegations, Antiquez admitted on cross-examination that he was not always around when Lindsey was with M.L., and the only basis for his conclusion that M.L.'s story was untrue was the belief that girls will say or do anything to get what they want.  Sedrick's and Sedrianna's testimony provide a general time line of events on the night of the football game, but neither witness was present when M.L. was alone with Lindsey.  And while Lindsey speculates that the delay by M.L. and T.P. in reporting these alleged crimes is inconsistent with the conduct of a victim of a sex crime, this Court has found just the opposite to be true. *See Massey v. State*, 992 So. 2d 1161, 1164 (Miss. 2008) (finding victim's three-week delay in reporting sexual abuse to be "consistent with the conduct of a person victimized by a sex crime.").

¶18.    This Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." *McClain*, 625 So. 2d at 781; *see also Burrell v. State*, 613 So. 2d 1186, 1192 (Miss. 1993). The evidence presented by the State in the instant case is similar to that presented in *Sanders v. State*, 586 So. 2d 792, 797 (Miss. 1991), in which this Court affirmed the defendant's conviction for sexual battery, even though there was no physical evidence of the crime and the fourteen-year-old victim's testimony was vague and inconsistent

9

as the location and particular details of the crime. This Court held that "the jury was there to evaluate the testimony and it would be difficult to say that the verdict was unreasonable under the facts in the record." *Id.* Similarly, the jury in this case was tasked with judging the credibility of M.L. and T.P. as witnesses after comparing their trial testimony to their prior CAC interviews. Ultimately, no evidence in the record contradicts the testimony of M.L. and T.P. establishing each element of the charged offenses. Lindsey's argument is without merit.

## CONCLUSION

¶19. The instant case is not one of the exceptional cases where the evidence "preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844. Accordingly, for the foregoing reasons, we affirm Lindsey's convictions and sentences.

¶20. **COUNT I: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES ARE TO RUN CONSECUTIVELY AND ARE TO RUN DAY-FOR-DAY, AND SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE, PROBATION OR EARLY RELEASE. THE APPELLANT IS TO REGISTER AS A SEX-OFFENDER.**

**DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**