# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01758-COA

RICKIE GREEN                                                                APPELLANT

v.

STATE OF MISSISSIPPI                                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2017 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PHILIP CAREY HEARN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/25/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WESTBROOKS, McDONALD AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Rickie Green appeals his conviction in the Tunica County Circuit Court for one count of fondling by an authority figure in violation of Mississippi Code Annotated section 97-5-23(2) (Rev. 2015).  Green asserts that the trial court erred in denying his motion for a new trial.  Green also asserts that the trial court failed to conduct an investigation into whether juror misconduct resulted in an unfair trial.  We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     On Thanksgiving Day 2015, D.D.,[1] her parents Willie and Loran, and numerous other

---

[1] We use initials to protect the identity of the minor child.

relatives were at Green's residence he shared with his wife, Shirley Isabell, and their children and grandchildren. Green gave D.D. and two of her younger cousins two rides on his four-wheeler to a spot some distance from the residence.

¶3. At trial, D.D. testified that during the second four-wheeler excursion, Green stopped to use the restroom by a pond. D.D. stated that when Green returned to the four wheeler, he stuck his hand down her pants into her underwear and touched her vagina. Upon returning from the second excursion, D.D. was seen walking back toward the house while the other children were still on the four wheeler. D.D. testified that she was crying and highly upset. She stated that she immediately told her father what Green had done to her, because he was standing outside when she arrived home.

¶4. A short time later, there was an altercation regarding the incident among Willie, Shirley, and Shirley's son, and the police were called to the Greens' home. Shirley testified that the altercation started after Willie took a swing at her; however, Willie testified that the altercation occurred after he tried to speak with Green regarding D.D.'s allegation of sexual abuse. Officer Victor Randle, formally with the Tunica County Sheriff's Office, responded to the disturbance. Officer Randle testified that when he arrived he encountered D.D. and her mother, Loran. D.D. informed Officer Randle that her uncle, Green, put his hands down her pants and touched her between her legs. Officer Randle stated that he collected clothes from Green's house to test them for evidence.

¶5. Detective John Logwood, an investigator with the Tunica County Sheriff's Office,

took D.D. for her forensic interview with Meredith Rawl. Rawl, an expert in the field of forensic interviewing, testified that D.D. disclosed that Green touched her vagina while on the four wheeler. Rawl stated that based upon her interview with D.D., she believed that D.D.'s statements were consistent with a child who had been abused.

¶6. Green testified on his own behalf and claimed that he touched D.D., just not in the sexual manner that she maintained. Green stated that he grabbed D.D. right before hitting a speed bump to stop her from falling off. After he grabbed her, Green testified that D.D. stated "My momma said nobody touch me" and that D.D. started to cry.

¶7. Following a jury trial,[2] Green was convicted and sentenced to five years in the custody of the Mississippi Department of Corrections, with three years suspended with supervised probation. Green was also ordered to register as a sex offender upon release. Green filed a motion for a judgment notwithstanding the verdict (JNOV), and alternatively for a new trial.

¶8. At Green's hearing on his JNOV motion or motion for a new trial, one of his arguments was that one of the jurors on the jury panel failed to disclose pertinent information regarding her connection with the victim and witnesses in this case. The trial court denied Green's motion. Aggrieved, Green appeals the denial of his motion for a new trial.

## STANDARD OF REVIEW

¶9. In *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017), the Mississippi Supreme Court held:

---

[2] Green's first trial resulted in a mistrial.

3

When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. The evidence must be weighed in the light most favorable to the jury's verdict. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial, but this remedy should be used only in exceptional cases where the evidence preponderates heavily against the verdict.

(Citations and internal quotation marks omitted).

## DISCUSSION

**I.      Whether the verdict was against the overwhelming weight of the evidence.**

¶10.    In his first assignment of error, Green asserts that the verdict was contrary to the overwhelming weight of the evidence because the sole probative evidence the State offered was D.D.'s testimony. Although Green asserts that the trial court erred in denying his JNOV motion and motion for a directed verdict, or in the alternative, for a new trial, it appears that Green only challenges the denial of his motion for a new trial, which challenges the weight of the evidence. *See Dilworth v. State*, 909 So. 2d 731, 737 (¶20) (Miss. 2005). "The verdict must be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. at (¶21) (internal quotation mark omitted).

¶11.    Green was convicted on one count of fondling by an authority figure under Mississippi Code Annotated section 97-5-23(2) (Rev. 2015). This Code section reads:

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the

4

age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court. A person in a position of trust or authority over a child includes without limitation a child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

¶12. At trial, testimony established that Green was fifty years old at the time of the crime and that he was married to the victim's aunt, Shirley. D.D. was twelve years old at the time of the crime. D.D. testified at trial that Green put his hands on the inside of her clothing and touched her private area. D.D. also stated that once she returned to the house, she immediately told her father and other family members what happened.

¶13. "Our case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Lindsey*, 212 So. 3d at 47 (¶14). D.D. was visibly upset when she returned from the second four-wheeler excursion and immediately reported the incident after returning. D.D.'s father also testified that his daughter told him that Green touched her between her legs when they were riding the four wheeler. Therefore, D.D.'s testimony coupled with her father's testimony would have provided a sufficient basis for convictions without further corroboration. Moreover, Green did not offer any conflicting testimony other than his own—even though he admitted that he touched D.D. during the four-wheeler ride.

5

¶14. But Green maintains that D.D.'s description of where the crime took place was inconsistent and that testimony coupled with the lack of physical evidence proves that the verdict is against the overwhelming weight of the evidence. The Mississippi Supreme Court has held that "the jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." *Id*. at 49 (¶18).

¶15. Here, the jury weighed the evidence and considered the credibility of the witnesses. Accordingly, we find no abuse of discretion in the trial court's denial of Green's motion for a new trial. Viewing the evidence in the light most favorable to the verdict, the trial court did not sanction an unconscionable injustice in ruling that the judgment must stand.

## II. Whether there was juror dishonesty.

¶16. Green asserts that juror Megan Taylor withheld material information as to her relationships with numerous persons involved, including her relationship with D.D., during voir dire. As a result, Green maintains that he suffered significant prejudice and is entitled to a new trial.

¶17. During voir dire, the trial court asked whether anyone knew Rickkeyta Isabell or had a relationship with her. Taylor responded that she was Rickkeyta's classmate, however, she could still sit as a fair and impartial juror. The trial court also asked whether anyone there was related by blood or marriage to Bridgett Davis. Bridgett's name was on the list of potential witness, but she did not testify at trial. Taylor responded that Bridgett was her

6

cousin, however, she could still sit as a fair and impartial juror.

¶18.    Green, however, maintains that during voir dire, Megan Taylor failed to answer whether she knew or had a close relationship with Willie, Shirley Isabell, and D.D.  It was later discovered that Bridgett and Willie are cousins.  Yet, at the posttrial hearing, Taylor testified that she "knew of" Willie and his daughter.  Taylor also admitted to dating Shirley's son, Kendrell, while she was in high school; however, she acknowledged that she did not have a "close" relationship with any of the individuals involved in the case.  Green asserts that the trial court should have found that he established a presumption of prejudice and should have ordered an examination of the jury under *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407, 419 (Miss. 1993).

¶19.    In *Gladney*, the Mississippi Supreme Court held that

> in the absence of a threshold showing of external influences, an inquiry into the juror verdict is not required. When the threshold showing is made under the standards previously outlined, the court should conduct a post-trial hearing. The scope of the hearing is however, limited; *the proper procedure is for the judge to limit the questions asked the jurors to determine whether the communication was made and what it contained*.  Once it is determined that the communication was made and what the contents were, the court is then to decide whether it is reasonably possible this communication altered the verdict.

*Id*. (emphasis added).

¶20.    But in *Gladney*, both [parties] charged that the jury had been improperly influenced by extraneous prejudicial evidence.  *Id*.  Here, Green has not charged that his verdict was influenced by extraneous evidence and there was no evidence of the same.  Green asserts that

7

Taylor withheld information during voir dire. Therefore, the *Gladney* test does not apply.

¶21. Our Mississippi Supreme Court has stated:

> We hold that where, as here, a prospective juror in a criminal case *fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire*, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond.

*Doss v. State*, 882 So. 2d 176, 181 (¶5) (Miss. 2004) (emphasis added) (quoting *Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978)).

¶22. In *Odom v. State*, the defendant was granted a new trial where a juror failed to reveal that his brother was one of the investigating officers in the murder that the defendant was charged with. *See Odom*, 355 So. 2d at 1383. In *Merchant. v. Forest Family Practice Clinic P.A.*, 67 So. 3d 747, 756 (¶20) (Miss. 2011), the Mississippi Supreme Court referred to the aforementioned language in *Odom* and *Doss* as "the standard of review for juror misconduct arising from a failure to respond to questions during voir dire."

¶23. Also in *Merchant*, the supreme court stated the following regarding prejudice:

> [A] party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we must reverse on appeal. We presume prejudice. Where, as a matter of common experience, a full and correct response would have provided the basis for a peremptory challenge, not rising to the dignity of a challenge for cause, our courts have greater discretion, although a discretion that should

8

always be exercised against the backdrop of our duty to secure to each party trial before a fair and impartial jury.

*Id*. at 757 (¶22). Therefore, we find that standard applicable to this case.

¶24. Here, the record reflects that during jury selection, the defense ultimately accepted Taylor as a juror without additional inquiries concerning her relationships. Green was properly notified of Taylor's relationship to D.D., Rickkeyta, and Bridgett Davis. Therefore, Green's attorney should have done a more diligent and thorough inquiry during voir dire once Taylor disclosed her kinship with Bridgett Davis. The trial court found that after Green's attorney inquired whether Taylor was related to Bridgett Davis, his inquiry should have gone to further to ask whether she was related to D.D. and Willie; however, the inquiry ceased.

¶25. Furthermore, Taylor informed the trial court that even if she was related to D.D. and Willie, she did not have a close relationship with them nor did she have any contact with them. The record also reflects that Taylor denied being related to Willie and D.D. As a result, it appears that the trial court found after inquiry into the nature of the information that was withheld, that no prejudice presumed—which is a finding of fact. Therefore, Green's argument that the trial court should have proceeded with an inquiry of the jury under *Gladney* is without merit.

¶26. Accordingly, we find no error in the trial court's judgment.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

9