# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01013-COA

JESSICA CLEMTS A/K/A JESSICA LEE
CLEMTS
          APPELLANT

v.

STATE OF MISSISSIPPI
          APPELLEE

DATE OF JUDGMENT: 04/21/2021
TRIAL JUDGE: HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED: FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
 BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
 BY: ALEXANDRA LEBRON
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 09/27/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1. A Forrest County Circuit Court jury found Jessica Clemts guilty of aggravated assault for stabbing Jennifer Moore in the torso with a knife. Clemts was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections. On appeal, Clemts contends the verdict was contrary to the weight of the evidence and seeks a new trial.

### FACTS

¶2. On August 5, 2018, Clemts and her boyfriend Augustus Moore (Gus) had been drinking and got into an argument at their house. In order to get away from the argument, Gus left and went to his uncle David Allen Moore's house. Gus arrived at about 8 p.m. and

asked David if he could sleep on David's couch so he could go to work the next morning. David agreed, so Gus lay down on the couch, and they watched television. Gus's sister, Jennifer Moore, and her fiancé Ernie Lott were living with David at that time and also were present when Gus came over.

¶3.     Jennifer testified at trial and described the events of that evening. According to Jennifer, about an hour after Gus arrived, Clemts came into the house through the back door. Clemts asked if they had any leftover food, and Jennifer offered her a hamburger. After declining the hamburger, Clemts asked David if she could borrow his knife sharpener. Jennifer got the knife sharpener and handed it to Clemts. Clemts sat down at the kitchen table and began sharpening her knife. As shown by the photos admitted into evidence, this is a large open area. Jennifer was in the kitchen area loading the dishwasher and getting the laundry together, David was in his chair, and Gus was lying on the couch. Ernie left the house when Clemts came in. The table where Clemts was sitting was between the area where Jennifer was working and the area where David and Gus were watching television.

¶4.     Jennifer testified that Clemts was really angry and was "mouthing off" to Gus. Clemts kept getting louder, which made David uneasy. David had just gotten out of the hospital after suffering a heart attack. Jennifer asked her several times to calm down and have respect for David and his condition. The argument between Clemts and Gus continued to get louder, and at some point Clemts hit the top of the table. According to Jennifer, this noise really "spooked" David.  Jennifer then told Clemts she had to leave. Clemts stated she was not going anywhere and told Jennifer that it was not her house. At that point, David confirmed

2

that Clemts needed to leave. When she would not leave, Jennifer approached Clemts and grabbed her in an effort to get her up from the chair and out of the house. Clemts responded by stabbing Jennifer in the torso with the knife she had been sharpening. The blade entered Jennifer's torso, and Clemts quickly pulled the blade out. Jennifer ran out of the house and ultimately was taken to the hospital by ambulance. Jennifer had exploratory surgery to determine the extent of her injury. She stayed in the hospital for three days.

¶5.     David's testimony suggested that everything was fine that night until Jessica came in and started "raising cane." David said Clemts had something to say about everything. When Clemts started "hollering" at Gus, Jennifer told Clemts that she could not behave that way and that she had to leave. When Clemts refused to leave, David testified that Jennifer walked over and grabbed Clemts, in some fashion, in an effort to get her out of the chair to leave. David testified that Clemts then "wheeled back around and stuck her in the belly there." Based on what he saw, David told the jury that he did not believe the stabbing was an accident and did not believe it was done in self-defense.

¶6.     The jury found Clemts guilty of aggravated assault. Clemts' post-trial motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied. On appeal, Clemts argues that the jury's verdict was contrary to the weight of the evidence.

## STANDARD OF REVIEW

¶7.     *Jones v. State*, 330 So. 3d 793, 803 (¶35) (Miss. Ct. App. 2021), describes our standard of review on this issue:

> When reviewing a challenge to the weight of the evidence, this Court must determine whether the trial court abused its discretion. *Daniels* [*v. State*], 107

3

So. 3d [961,] 963 (¶12) [(Miss. 2013)]. When determining if a trial court abused its discretion in denying a motion for new trial, this Court will not act as the "thirteenth juror." *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017). The trial court judge is in the "best position to view the trial" because he or she is able to hear the witnesses, observe witnesses' demeanor, and make "far better equipped" findings of fact. *Id.* at 291 (¶18). This Court does not "make independent resolutions of conflicting evidence[,] . . . reweigh the evidence[,] or make witness-credibility determinations." *Id.* at 292 (¶20). That is for the jury to decide. *Id.* This Court will weigh the evidence in the light most favorable to the verdict. *Id.* at 291 (¶21). We will only disturb a verdict when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017)).

**ANALYSIS**

¶8.      Clemts' testimony at trial describing the events of the night of the stabbing differed from the version of events described by the State's witnesses. Clemts testified that while she was trying to talk with Gus and get him to come home, Jennifer kept "[sticking] her nose in somebody's business that she shouldn't have I guess is basically the way it goes." According to Clemts, neither Jennifer nor anyone else asked her to leave. Instead, according to Clemts, Jennifer wanted her to "just come outside," which Clemts understood to mean that Jennifer wanted to fight. Clemts testified that she did not want to fight. Clemts contends she was about to get up and leave when Jennifer

> comes up behind me, grabs me by the nap of my head and I just got my hair cut that day and grabbed me so tight and so close to where I did not have no room to go anywhere but right in her boobs. I remember sitting there. It seemed like forever. I never felt the knife. At the time I didn't even think about the knife at the moment because of everything that happened. I didn't know where it was. And then I thought and when I thought, I tried to pull my hand and I felt it in her and all. I couldn't pull it out. We both just sat there, you know, in awe. I mean, it was bad. Bad. I didn't even pull the knife out. I was scared to.

Clemts argues on appeal that the evidence supports only two possible conclusions. Either

4

Clemts stabbed Jennifer in self-defense in response to Jennifer's assault on her, or the stabbing was an accident caused by Jennifer's attack on Clemts. Clemts' main argument on appeal is that had Jennifer not assaulted Clemts, Jennifer would not have been stabbed.

¶9.     Clemts trial counsel did not argue that the stabbing was in self-defense and specifically withdrew the proposed defense instructions on self-defense.[1] During the jury instruction conference, the following exchange occurred:

| | |
|---|---|
| **The Court**: | All right. S-2 will be given without objection. That brings us to 3. Now, this is a self-defense instruction. It's my understanding from conversations off the record the Defense does not intend to claim self-defense? |
| **[Defense counsel]**: | I don't believe that the evidence meets the elements, Your Honor, just to be perfectly frank on that. |
| . . . . | |
| **The Court**: | . . . All right. D-9 is a self-defense instruction. You indicated that you weren't pursuing self-defense; is that correct? |
| **[Defense counsel]**: | That's correct, Your Honor. We're going to withdraw D-9 and D-10. They are both self-defense instructions. |
| **The Court**: | All right. D-9 and D-10, which are self-defense instructions, are withdrawn, as the Defendant is not--it's not the Defendant's theory of the case. . . . |

¶10.     Instead of self-defense, Clemts' trial counsel argued that the stabbing was the result of "accident or misfortune." Trial counsel requested, and the court gave, a jury instruction on this defense theory. Jury Instruction Number 6 read in part:

---

[1] While Clemts' trial counsel withdrew her proposed self-defense instructions, the State's elements instruction, given as Jury Instruction Number 7 required, among other elements, that the jury find beyond a reasonable doubt that Clemts was not acting in self-defense.

The Court instructs you must find the Defendant, "not guilty" even if she committed acts which caused injury to Jennifer Moore, and even if she had ill will or malice toward Jennifer Moore if you have a reasonable doubt about whether these acts, if any, were either: . . . (b) committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation . . . . Since the burden is not on the Defendant to prove the existence of these conditions, you must find the Defendant "not guilty" if the evidence raises a reasonable doubt that Jennifer Moore's injury may have occurred under any one of the foregoing circumstances.

Trial counsel's argument to the jury was that Clemts did not *intend* to stab Jennifer or that she did not *purposely* stab Jennifer. Counsel argued that it was an accident caused by Jennifer's sudden attack on Clemts. The verdict shows that the jury rejected this argument.

¶11. In contrast, Clemts' appellate counsel focuses on a claim of self-defense and gives only brief mention to the defense of accident or misfortune. Clemts cites a number of cases to show that Jennifer did not have to be armed or exhibit a weapon for her to claim self-defense. Clemts' brief does not acknowledge, though, that her trial counsel withdrew proposed self-defense instructions and focused her defense on accident or misfortune. The State argues that any claim of self-defense has been waived since it was not raised at trial. However, because the issue of self-defense was in the State's elements instruction, the jury presumably found beyond a reasonable doubt that Clemts was not acting in self-defense when she stabbed Jennifer. Again, as shown by the verdict, the jury presumably rejected any claim of self-defense.

¶12. Basically, Clemts argues on appeal that the jury was wrong and that she should be given a new trial with a different jury. But the jury in this case did what all juries are required to do. In *Kidder v. State*, 326 So. 3d 1027, 1032 (¶15) (Miss. Ct. App. 2021), this Court

6

explained:

> Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict." *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979).

In the present case, the jury heard all the testimony and arguments of counsel. During deliberations, they apparently resolved conflicts in the evidence and weighed the credibility of the witnesses' testimony in favor of the State's version of events. As stated in *Jones*, 330 So. 3d at 803 (¶35), it is not the role of this Court re-weigh the evidence or make credibility determinations. Instead, we must weigh the evidence in the light most favorable to the jury's verdict. *Id*. We must then decide whether "the evidence is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*.

¶13.    Based on the jury instructions given and the returned verdict of guilty of aggravated assault, the jury found that Clemts knowingly stabbed Jennifer with a knife and was not acting in self-defense. The jury also found beyond a reasonable doubt that the stabbing was not the result of accident or misfortune as defined in Jury Instruction Number 6.

## CONCLUSION

¶14.    After viewing the evidence in the light most favorable to the jury's verdict, we find that the verdict is supported by the evidence and that to allow the jury's verdict to stand would not sanction an unconscionable injustice in this case.

¶15.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**