# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-KA-00171-COA

**DUANE LAMAR HOWARD, JR. A/K/A DUANE HOWARD A/K/A DUANE L. HOWARD, JR.**    APPELLANT

**v.**

**STATE OF MISSISSIPPI**    APPELLEE

DATE OF JUDGMENT:                    02/03/2025
TRIAL JUDGE:                         HON. BRAD ASHLEY TOUCHSTONE
COURT FROM WHICH APPEALED:           LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: INDIA MARIAH SPRINKLE
DISTRICT ATTORNEY:                   HALDON J. KITTRELL
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 06/09/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Duane Lamar Howard Jr. was convicted of two counts of statutory rape, two counts of touching a child for lustful purposes, and one count of sexual battery. He was sentenced to serve three life sentences in the custody of the Mississippi Department of Corrections. Following the denial of his post-trial motions, Howard now appeals, arguing primarily that the State's cross-examination of Howard exceeded the scope of the trial court's ruling permitting prior-bad-acts evidence under Mississippi Rule of Evidence 404(b). Finding no reversible error, we affirm.

# FACTS

¶2.     Howard was indicted for sexual offenses against his granddaughter, K.H., and her friend, S.E.,[1] who were eleven and twelve years old at the time of the incidents. Howard was fifty-one and had been living in Mississippi as a registered sexual offender after he pled guilty to molesting his two stepdaughters in 2001 via an *Alford* plea.[2]

¶3.     The State moved pre-trial to admit evidence of Howard's prior bad acts under Mississippi Rule of Evidence 404(b). The State sought to introduce Howard's prior convictions of child molestation, the testimony of two prior victims, and testimony from another child, S.T., who was K.H.'s boyfriend in 2023. The State argued the testimony and convictions were permissible to demonstrate that Howard's current actions showed a consistent plan and pattern of abuse in the past. Additionally, the State contended that S.T.'s testimony would detail a similar pattern of Howard buying the victims alcohol and gifts as a way of luring them into compromising situations.

¶4.     Howard opposed the motion, arguing that the prior bad acts were too remote in time to establish a pattern and that their admission would be more prejudicial than probative under Mississippi Rule of Evidence 403. Following a hearing, the court granted the State's motion. The court reasoned:

> I'm going to grant it, as well. It also allows the State to show 404(b) purposes of intent, preparation and plan. It also serves as corroboration of the other victims in the case, and it's also probative. It shows his pattern of allegedly working these kids to advance his interest in this regard and goes to support a

---

[1] Initials are used to protect the identity of the minor victims.

[2] *See North Carolina v. Alford*, 400 U.S. 25, 38-39 (1970).

404(b) purpose of intent and plan. Same is true for the allegations about the alcohol. That allows the State to tell the whole story of what happened, and, obviously, unless you have other information the acts involving him and Perry County are so close in time, it also allows the State to finish out the story, as to what happened in this case and shows that continuing pattern that's alleged by the State, which is a permissible purpose under 404(b), and I also find its probative values outweighed by any undue prejudice under 403.

The court agreed to provide a general limiting instruction to the jury, including an acknowledgment that Howard's prior conviction was made by an *Alford* plea.

¶5.     K.H., S.E., and S.T. all testified at trial. K.H. testified that her grandfather began sexually abusing her when she was between the ages of nine and ten. She lived with her grandfather and his wife in a trailer, along with her brother. The abuse began one night when she was sleeping in bed with her grandparents. Howard began touching her under her clothes and used his "bottom part" to penetrate her "bottom part." The abuse continued with Howard frequently secretly molesting K.H. in the trailer. She testified that he would use his fingers and tongue to touch her chest and penetrate her "bottom part." He would also guide her to stroke his penis with her hand. K.H. was "terrified" of Howard and afraid to disclose the abuse due to his anger and threats. He threatened that "something bad would happen" if she disclosed the abuse and threatened to "knock [her brother's] teeth down his throat." He would also offer her cash and buy her gifts, such as underwear, swimsuits, and alcohol.

¶6.     When eleven-year-old K.H. began dating twelve-year-old S.T., Howard encouraged them to have sex in front of him. S.T. testified that when he refused, Howard got in the bathroom with K.H. and yelled at her, after which she came back shaken up. When they had sex, Howard was in the bed beside them and gave them ideas of what he wanted them to do.

3

Howard gave S.T. alcohol and condoms and showed S.T. and K.H. pornographic videos. Howard told S.T. that if he told anyone, his parents would go to jail.

¶7.     S.E. is S.T.'s cousin. She met and became friends with K.H. around this time. Howard had K.H. send him pictures of K.H. and S.E. french-kissing. He also had a photo collage of K.H. kissing a different child who was a similar age as her. Howard took K.H. and S.E. to the mall, telling them in a text, "[Y]ou two wear something sexy going to the mall, LOL." He took them to a sex toy store where he bought pink fuzzy handcuffs and lubricant. Then, at Victoria's Secret, he insisted on being in the changing room while the girls tried on lingerie despite S.E. telling him she was uncomfortable.

¶8.     In February 2023, Howard took K.H. and S.E. out to eat. Instead of driving them to K.H.'s mother's house after eating, which is what S.E. expected, Howard purchased alcohol and encouraged the girls to drink it. He took them to his trailer under the pretext of needing to feed his dogs. He took the girls to his bedroom, stripped them, and undressed himself. He then instructed them to put a condom on his penis. He then sexually assaulted both girls. He took the girls to K.H.'s home and stayed the night. K.H. witnessed him assault S.E. again later that night while S.E. was passed out from drinking. When she woke up, he put the handcuffs on her and "licked [her] downstairs."

¶9.     K.H. and S.E. eventually disclosed the abuse, triggering an investigation. An investigator with the Lamar County Sheriff's Office testified that a search of Howard's trailer and phone uncovered inappropriate messages sent from Howard to his granddaughter, including sexually charged memes and a video of a woman suggestively shoving a banana

4

down her throat. A hidden application on Howard's phone contained deleted photos that were extracted, showing K.H. in a bikini. The photos had been cropped to show only K.H.'s breasts and bottom. Investigators did not recover the pink handcuffs. Prior to the search, Howard texted his brother the word "handcuffs." A certified pediatric sexual assault nurse examiner testified that she did not find signs of injury during K.H.'s physical exam. However, she additionally testified that children who have been repeatedly abused typically do not show signs of injury, and she said it is typical that an examiner "cannot tell if a child has been sexually assaulted based on the status of the hymen or lack of injury."

¶10.    The jury heard testimony from two of Howard's prior sexual-assault victims. Sarah, who was age thirty-five at the time of Howard's current trial, testified that, starting when she was five years old, Howard repeatedly sexually assaulted her at night when Howard was dating her mother. He would also allow his friends to touch her. He showed her pornography and gave her and her sister alcohol and gifts in exchange for sex. He threatened to kill her family if she told anyone what he was doing to her. Amber, another victim, testified that Howard sexually abused her when she was ten years old. The first time happened when she was in bed with her sister. He abused them almost every day. She would wake up with his mouth on her vagina, and he would make her put her mouth on his penis. He would offer her money to let him suck her breasts, and he would offer to take her to get fast food in exchange for sexual favors. The investigation into this abuse resulted in Howard's 2001 guilty plea.

¶11.    Howard testified in his own defense. He admitted to being with the two girls during the time of the alleged incidents, but he denied that he engaged in any sexual misconduct. He

said that the sexual memes were just jokes, that the cropped bathing suit pictures were to show K.H.'s mother that the suit was too large, and that he had the pictures of the girls kissing because they were dating, and he wanted to make a photo collage for them.

¶12. During the State's cross-examination, the prosecution asked Howard if he remembered what the two prior victims had testified on the stand, repeating details of their testimony that had been presented during the State's case-in-chief. The owner of the land where Howard's trailer home is located testified that he was on the property the night of the alleged assault of both girls but did not observe any children present, and he said he was unaware of any inappropriate behavior involving Howard and children. Howard's wife, who had moved out of the home in 2022 due to a deterioration in their relationship, testified that she was not aware of any inappropriate acts by Howard against K.H.

¶13. The jury returned guilty verdicts. Howard now appeals.

## STANDARD OF REVIEW

¶14. Evidentiary rulings, including whether to admit Rule 404(b) evidence in a prosecution for sexual offenses, are reviewed for abuse of discretion. *Green v. State*, 89 So. 3d 543, 549 (¶15) (Miss. 2012). When reviewing a challenge to the weight of the evidence, our appellate courts "will only disturb a verdict if it is 'so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Burden v. State*, 347 So. 3d 174, 178 (¶15) (Miss. 2022) (quoting *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)).

## DISCUSSION

**I. Whether the State's cross-examination improperly went into the details of Howard's prior conviction.**

¶15. Under Rule 404(b), evidence of a prior crime, wrong, or other act may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b). These purposes are not exclusive. *Green*, 89 So. 3d at 549 (¶16). The testimony of prior victims of sexual abuse is admissible to show a pattern of similar means and acts of abuse. *Id.* at (¶17). However, when prior bad acts are admitted under Rule 404(b), "the court must present a limiting instruction to prevent the forbidden inference being drawn that because the defendant may have committed the prior bad acts, he is predisposed to have committed them again in the present case." *Bradshaw v. State*, 371 So. 3d 822, 837 (¶42) (Miss. Ct. App. 2023).

¶16. Howard argues that the State's cross-examination of Howard was improper because instead of merely establishing that Howard had the prior convictions, the State raised specific details of the prior crimes. Howard's cross-examination included the following exchange:

| STATE: | We heard [the prior victim] specifically talk about an instance where [you] put your penis inside her anus, correct? |

HOWARD: I don't remember that one.

STATE: And the same thing, she told us, you would agree with me, that you had paid her money, right?

HOWARD: She said that.

STATE: Or that you would take her to go get something to eat at the Sonic, right?

HOWARD: I don't remember that.

7

STATE:     And she told us that you would have her touch her sister, her five-year-old sister in the same way that you were touching her; did you hear that?

HOWARD:    Yes, ma'am.

STATE:     You would agree with me that the purchase of gifts is very similar, in fact, the same, as to what [K.H.] testified to, that you would buy her gifts in order for you to continue sexually perpetrating her?

HOWARD:    Restate that one again . . . .

. . . .

STATE:     My question is you would agree with me that [prior victim] and [prior victim] told us you bought them gifts, in order to perpetrate sexual acts on them, yes?

HOWARD:    As far as I know, I guess so . . . .

STATE:     And you would agree with me that [K.H.] testified that that is what you did with her, bought her gifts to continue to perpetuate sexual acts on her?

HOWARD:    I don't remember her saying that . . . .

STATE:     You would agree with me that both [prior victim] and [prior victim] testified that you would provide them alcohol in the 90s is that true?

HOWARD:    Both of 'em did say that.

STATE:     And you would agree with me that [K.H.] and [S.E.] and [S.T.] all testified that you would provide them alcohol in 2023, right?

HOWARD:    They did say that.

STATE:     And that [K.H.] testified that that alcohol got provided to her for you to continue performing sexual acts on her. Would you agree with me on that?

8

HOWARD: I believe she did say something like that.

STATE: What we also heard from [both prior victims] is that you would touch them on their breasts with your hands; is that true?

HOWARD: Correct, they all four said that.

STATE: And we heard [K.H.] and we heard [S.E.] testify from the stand that that's what you did in the trailer in February of 2023; is that true?

HOWARD: I don't remember if they were saying in the trailer . . . .

¶17. Howard points to a line of cases in which it was a reversible error for the State to cross-examine a defendant about the factual details of a prior conviction when impeaching a defendant for a prior inconsistent statement. In *Quimby v. State*, 604 So. 2d 741, 745 (Miss. 1992), the defendant testified that he had never abused his daughter. This opened the door for the State to impeach him with a prior conviction of attempting to cause or causing bodily injury to the daughter. *Id.* However, the conviction was reversed because the State waded into "the sordid details of the previous abuse" while questioning the defendant. *Id.* at 746. "While the introduction of the prior conviction for simple assault, under the facts of this case, was admissible for the purpose of impeachment, Quimby should not have been cross-examined about the details." *Id.* Further, it is a "well-settled rule in this state that a defendant may not be examined about the details of prior convictions." *Gallion v. State*, 469 So. 2d 1247, 1249 (Miss. 1985); *see also Acevedo v. State*, 467 So. 2d 220, 226 (Miss. 1985); *Thomas v. State*, 19 So. 3d 130, 135 (¶23) (Miss. Ct. App. 2009).

¶18. Here, though, Howard's prior conviction and the testimony of the prior victims were not introduced for impeachment purposes. Howard's prior victims testified during the State's

9

case-in-chief and were available for cross-examination. The details of their testimony were limited in scope to the Rule 404(b) purposes as determined pre-trial. The State's cross-examination of Howard asked if he recalled what the victims had stated earlier on the stand and did not ask him if those details were true. The questions related directly to the pattern of behavior evidenced in the current case, such as providing the victims with gifts and alcohol and engaging in similar sexual behavior. Further, the court provided the jury the requisite limiting instruction. The trial court did not commit reversible error in permitting the Rule 404(b) evidence, and the State's cross-examination of Howard was permissibly within the scope of the trial court's Rule 404(b) ruling.

## II. Whether the jury verdicts were against the overwhelming weight of the evidence.

¶19. Howard argues that the verdicts were against the overwhelming weight of the evidence, pointing to contradictions in the testimonies of K.H. and S.E. He notes that S.E. said that the first rape happened at K.H.'s house, followed by the second rape at Howard's trailer. However, K.H. said that the first incident happened at the trailer and that the second incident occurred at her home. S.E. stated that she was wearing a dress, but K.H. stated that both of them were wearing pants. S.E. recalled Howard pointing a gun at them, but K.H. did not recall a gun. Howard also points out that no physical or forensic evidence corroborates the victims' accounts and that their physical exams were normal.

¶20. Non-material contradictions in witness testimonies are insufficient to warrant reversal of a conviction. *Lindsey v. State*, 212 So. 3d 44, 48 (¶16) (Miss. 2017). "Such inconsistencies are neither unusual nor grounds for the jury to reject all of their testimony." *Id.* (quoting

10

*Kinney v. State*, 336 So. 2d 493, 497 (Miss. 1976)). In *Lindsey*, the defendant was convicted of two counts of gratification of lust and two counts of sexual battery. *Id.* at 45 (¶5). As in Howard's case, the testimony of the two minor victims constituted the primary evidence against the defendant. *Id.* The victims' statements contained inconsistencies, including the details of a location a victim had been before the incident took place, whether one victim witnessed the assault of the other victim, and on what night of a multi-day visit the incident had occurred. *Id.* at 48 (¶15). In finding the inconsistencies immaterial, our Supreme Court stated that the inconsistencies did "not tend to make it less likely that Lindsey committed the alleged offenses against the victims." *Id.* at (¶16). "The proper weight to be assigned to [the victims'] testimony, based on any alleged inconsistencies, was for the jury to decide." *Id.*; *see also Portis v. State*, 245 So. 3d 457, 472 (¶¶39-42) (Miss. 2018).

¶21.    Here, the contradictions in K.H.'s and S.E.'s testimonies are not material to the elements of the offenses. For the charge of statutory rape, the State had the burden to prove that Howard had sexual intercourse with a child under fourteen years old and twenty-four months younger than him. Miss. Code Ann. § 97-3-65(1)(b) (Rev. 2020). For the charge of touching a child for lustful purposes, the State had the burden to prove that Howard (a person over the age of eighteen) used a part of his body to "handle, touch or rub" a child under sixteen years old "for the purpose of gratifying [Howard's] lust, or indulging [his] depraved licentious sexual desires." Miss. Code Ann. § 97-5-23 (Rev. 2020). For the charge of sexual battery, the State had the burden to prove that Howard engaged in sexual penetration with a child under fourteen years old when he was at least twenty-four months older than the

child. Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2020).

¶22. The evidence presented by the State supported the jury's determination that the elements of the crimes were satisfied. The jury resolved the victims' inconsistent statements against Howard. *See Portis*, 245 So. 3d at 473 (¶41). Additionally, "no evidence in the record contradicts the testimony of [the victims] establishing each element of the charged offenses." *Lindsey*, 212 So. 3d at 49 (¶18). Finally, the absence of evidence of abuse from the physical examination of the victims does not support that the verdicts were against the overwhelming weight of the evidence. Our precedent has consistently recognized medical testimony that a normal physical exam can neither confirm nor deny sexual abuse. *Portis*, 245 So. 3d at 473 (¶41).

## CONCLUSION

¶23. The State's cross-examination of Howard did not exceed the scope of the trial court's Rule 404(b) ruling. Additionally, the jury's verdicts were not against the overwhelming weight of the evidence. We therefore affirm Howard's convictions and sentences.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**